[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1101 
Judge Harris was stopped by a state trooper and was charged by Uniform Traffic Ticket and Complaint (U.T.T.C.) with the offenses of speeding and of driving under the influence of alcohol (D.U.I.). Harris appealed to the Madison Circuit Court, and a jury found Harris guilty as charged on both charges. Harris was ordered to pay a fine of $35 and court costs for the speeding offense. On the D.U.I. offense, Harris was sentenced to six months in the county jail; 60 days on work release with the remainder suspended; he was placed on probation for one year, and he was ordered to pay a $500 fine, a victim's compensation assessment of $25, and court costs. Five issues are raised on appeal.
 I
Harris contends that the State failed to lay the proper predicate for the admissibility of the Intoxilyzer 5000 test results.
 A.
Harris initially contends that the trial court erred in admitting the results of the Intoxilyzer 5000 when the State did not show that this test has been adopted by the Alabama Department of Public Safety. The State responds that Harris waived review of this issue.
In reviewing the record, we are unable to locate any specific testimony to the effect that this particular testing method was adopted by the agency administering the test — in this case the Alabama Department of Public Safety.
We note, moreover, that when the State attempted to introduce both the procedure form that Trooper Mark Hall used while administering the Intoxilyzer 5000 test and the printout of the deficient test results, defense counsel interposed the specific objection that the State had failed to show that this test had been adopted by the Alabama Department of Public Safety, and the trial court overruled his objections and admitted the form and the test results into evidence. Hence, this issue has been properly preserved for review.
The State argues, alternatively, that the lack of specific testimony on this point does not require reversal because the court may look to the entire testimony of Trooper Hall to supply this information.
At the outset, we note that we are mindful of the decision of the Alabama Supreme Court in Ex parte Reed, 492 So.2d 293 (Ala. 1986), which held that, because the State failed to introduce any testimony that the agency administering the photoelectric intoxilyzer ("P.E.I.") test to the defendant had adopted the method of testing, the State failed to lay the proper predicate for admission of the P.E.I. test results. The court, however, based its technical holding upon the absence of any testimony from the administering officer with reference to the number of times that he had previously administered the test or the number of years he had been administering the test.
In the case of Estes v. State, 358 So.2d 1050 (Ala.Cr.App. 1977), cert. denied, 358 So.2d 1057 (Ala. 1987), this Court held that where the officer 1) had administered over 1,000 tests over an eight- to ten-year period; 2) had attended a special academy for training; 3) was licensed by the State Board of Health to administer the test; and 4) he followed the checklist and rules of the State Board of Health, a proper, if not formal, predicate was established despite the absence of testimony that the administering agency had adopted that particular form of testing. We note, moreover, that the Supreme Court in Ex parte Reed, supra, did not overrule our holding inEstes.
In the case sub judice, the record reveals that Trooper Hall 1) had administered over 400 tests on the Intoxilyzer 5000; 2) had attended a special academy for training; 3) was licensed by the State Board of Health *Page 1102 
to administer the test; and 4) had followed the checklist and rules of the State Board of Health in administering the test to Harris.
We therefore hold that, based upon the entire testimony of Trooper Hall, the State established a proper, if not formal, predicate for the admission of the Intoxilyzer 5000 test results, despite the absence of any testimony that the administering agency had adopted that form of testing. We note, moreover, that the State did introduce into evidence the certified rules on the chemical test for intoxication which reflect that the Intoxilyzer 5000 was approved by the Alabama Department of Forensic Sciences and the State Board of Health.
 B.
Harris alleges that the trial court erred in allowing Trooper Hall to testify about the contents of the instrument log over his best evidence and hearsay objections. According to Harris, to establish a proper predicate for admission of the test results, the State should have admitted the log itself.
Although we agree that the trial court erred in allowing Hall's testimony concerning the contents of the log over the test evidence and hearsay objections, it was harmless error under Rule 45, A.R.App.P. The State is not required to prove that the machine used for testing had been previously determined to be accurate and had been periodically inspected.Ex parte Reed, 492 So.2d 293 (Ala. 1986). Trooper Hall testified that the instrument checks itself, sets to zero, takes its sample, then resets to zero, thus establishing the internal accuracy checks. Hence, it was merely harmless error for the trial court to allow Hall to testify concerning the log.
 II
Harris contends that the trial court erred in admitting the results of an Intoxilyzer 5000 blood-alcohol test because the sample was deficient. The State responds that Harris has waived review of this issue.
Trooper Hall testified that he used the Intoxilyzer 5000 machine to obtain a blood-alcohol level on Harris but that Harris did not blow into the machine for a long enough period of time, and a deficient sample reading of .22 percent blood-alcohol level was obtained. Hall testified that a deficient sample meant that the instrument was not able to get the highest level of blood alcohol but that Harris's blood alcohol level was at least the level given as the test result and could be more.
The record reveals that defense counsel timely objected to Trooper Hall's testimony as to the results of the deficient sample, and his objection was overruled before Hall stated to the jury that the deficient reading was .22 percent. Hence, Harris preserved this issue for appellate review.
In the recent case of Woods v. State, 593 So.2d 103
(Ala.Cr.App. 1991), this Court held that testimony by the defendant that he had snuff in his mouth when he took the Intoxilyzer 5000 test would not affect the admissibility of the test results but would affect the weight accorded this evidence. Applying the Woods holding to the instant case, we likewise hold that where Harris did not blow continuously into the machine for the prescribed period of time, the deficient test reading which resulted would not affect the admissibility of the test results but would affect the weight accorded this evidence. Because all objections regarding predicate have been sustained, the test results were admissible and the deficiency of the sample would go to its weight and not its admissibility.
 III
Harris contends for the first time on appeal that the trial court erred in admitting testimony regarding the contents of a bag found in Harris's vehicle.
The record reveals that defense counsel objected only to Trooper Hall's "statement about looking into a bag . . ." because Hall's actions constituted an unauthorized search. Defense counsel did not object to Hall's testimony as to the contents of the bag or the amount of liquor remaining in the bottle found in the bag. *Page 1103 
"Review by this court is limited to matters properly raised in the trial court. . . . A defendant is bound on appeal by the grounds stated at trial and specified grounds of an objection to evidence waives [sic] all other grounds." Vinzant v. State,462 So.2d 1037, 1040 (Ala.Cr.App. 1984), cert. denied,462 So.2d 1037 (Ala. 1985).
 IV
Harris contends that the evidence was insufficient to convict him of driving under the influence.
Section 32-5A-191(a)(2), Code of Alabama 1975, the offense with which Harris was charged, provides that "[a] person shall not drive or be in actual physical control of any vehicle while . . . [u]nder the influence of alcohol. . . ."
To establish a prima facie case of driving under the influence under § 32-5A-191(a)(2), the State must prove beyond a reasonable doubt that Harris drove or was in actual physical control of a motor vehicle while under the influence of alcohol to the extent that it affected his ability to operate his vehicle in a safe manner. Ex parte Buckner, 549 So.2d 451 (Ala. 1989).
A careful review of the record reveals that the State clearly presented sufficient evidence to establish a prima facie case of driving under the influence.
Trooper Hall testified that he observed Harris operating a motor vehicle on Interstate Highway 565 at 9:17 p.m. on January 1, 1991; that Harris was speeding at a rate of 77 m.p.h. by radar; and that Harris was going in and out of traffic without using his turn signal; and that Harris was weaving in his lane of traffic. Hall administered field sobriety tests to Harris after noticing a strong odor of alcoholic beverage on Harris, and Harris was unable to successfully complete the tests. Hall then arrested Harris for D.U.I. and observed a bag with an opened bottle of an alcoholic beverage on the front passenger seat. The trial court therefore properly denied Harris's motion for a directed verdict based upon this evidence presented by the State.
 V
Harris contends that the trial court erroneously charged the jury on the rebuttable presumption regarding blood-alcohol evidence stated in § 32-5A-191(a)(1), Code of Alabama 1975, when Harris was charged with violating § 32-5A-191(a)(2). We disagree.
The relevant portion of the trial court's charge is as follows:
 "The Statute under which this defendant is prosecuted makes it unlawful for a person to drive or be in actual physical control of any vehicle while under the influence of alcohol.
 "Section 32-5A-191(a)(2), Code of Alabama 1975, states as follows: A person shall not drive or be in actual physical control of any vehicle while under influence of alcohol. Therefore, to sustain the charge of driving under the influence that is made in this case, the State must prove beyond a reasonable doubt each of the following elements of that offense. First, that on January 1, 1991, the defendant drove or was in actual physical control of a motor vehicle; two, at such time and place the defendant was under the influence of alcohol; and, three, that the defendant was under the influence of alcohol to the extent that it affected his ability to operate his vehicle in a safe manner.
 "When a person is under the influence of alcohol, his ability to drive is impaired, and he is incapable of driving safely.
 "Accordingly, a person is guilty of violating the law involved in this case if he drives a vehicle under the influence of alcohol; and, further, that he was under the influence of alcohol to the extent that it affected his ability to operate his vehicle in a safe manner.
 "When deciding whether the State has proved that the defendant was under the influence of alcohol, in addition to the evidence that you have seen and heard, you may also take into account the following statute enacted into law by the Alabama state legislature, and I quote from that statute: 'Upon the trial in a civil, criminal, or quasi criminal action or *Page 1104 
proceeding arising out of acts alleged to have been committed by any person while driving or in actual physical control of a vehicle while under the influence of alcohol, the amount of alcohol in a person's blood at the time alleged, as shown by chemical analysis, of the person's blood, urine, breath, or other bodily substance shall give rise to the following presumptions: one, if that there were at that time .05 percent or less by weight of alcohol in a person's blood, it shall be presumed that the person was not under the influence of alcohol; two, if there were at the time in excess of .05 percent but less than .10 percent by weight of alcohol in the person's blood, such facts shall not give rise to any presumption that the person was or was not under the influence of alcohol; but such facts shall be considered with other competent evidence in determining whether the person was under the influence of alcohol; three, if there were at that time .10 percent or more by weight of alcohol in a person's blood, it shall be presumed that the person was under the influence of alcohol.'
 "Now, this statute that I have just read to you is not conclusive on the question of whether the defendant was under the influence of alcohol at the time and place alleged in the complaint, rather that statute merely states certain legislative presumptions.
 "Nevertheless, you may, indeed you should, take that statute into account in your deliberations in this case. As you do so, however, bear in mind that those legislative presumptions may be rebutted or overcome by other evidence. But that simply is a matter for you to determine and decide as you fully and fairly debate all of the evidence that you have seen and heard."
It is clear from an examination of this charge that the court charged the jury on the rebuttable presumption found in §32-5A-194(b), Code of Alabama 1975, which states:
 "(b) Upon the trial of any civil, criminal, or quasi-criminal action or proceeding arising out of acts alleged to have been committed by any person while driving or in actual physical control of a vehicle while under the influence of alcohol, the amount of alcohol in the person's blood at the time alleged as shown by chemical analysis of the person's blood, urine, breath or other bodily substance shall give rise to the following presumptions:
 "(1) If there were at that time 0.05 percent or less by weight of alcohol in the person's blood, it shall be presumed that the person was not under the influence of alcohol.
 "(2) If there were at the time in excess of 0.05 percent but less than 0.10 percent by weight of alcohol in the person's blood, such fact shall not give rise to any presumption that the person was or was not under the influence of alcohol, but such fact may be considered with other competent evidence in determining whether the person was under the influence of alcohol.
 "(3) If there were at that time 0.10 percent or more by weight of alcohol in the person's blood, it shall be presumed that the person was under the influence of alcohol.
 "(4) The foregoing provisions of this subsection shall not be construed as limiting the introduction of any other competent evidence bearing upon the question whether the person was under the influence of alcohol."
The Intoxilyzer 5000 blood-alcohol test results are circumstantial evidence of being under the influence of alcohol, and the results of a chemical test for intoxication may be introduced in a prosecution under either §32-5A-191(a)(1) or § 32-5A-191(a)(2). Harry v. State,571 So.2d 392 (Ala.Cr.App. 1990).
Because Harris's blood alcohol test results were admitted into evidence, it was proper for the trial court to charge the jury on the rebuttable statutory presumption.
The foregoing opinion was prepared by the Honorable James H. Faulkner, a former Alabama Supreme Court justice, and *Page 1105 
his opinion is hereby adopted as that of the court.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.