OPINION OF THE COURT
 

 Memorandum.
 

 The order of Appellate Term should be modified by reinstating the judgment of the District Court and, as so modified, affirmed.
 

 Defendant was arrested at 2:00 a.m. after a high-speed chase
 
 *844
 
 on the Long Island Expressway in which he drove his vehicle from lane to lane, cut across three lanes to an exit ramp, drove over the cement and grass strip separating the exit ramp from the expressway, thereby forcing another car off the road, ran a red light at high speed and eventually was stopped by a roadblock of police vehicles three and one-half miles after the chase began. When removed from his car, defendant smelled of alcohol, acted dazed and confused and failed the sobriety tests administered to him by the police. He was removed to Central Testing at Mineóla Police Headquarters where a certified breath analysis operator administered a breath test with an Intoxilyzer 5000, a testing device approved by the Department of Health
 
 (see,
 
 Vehicle and Traffic Law § 1194 [4] [c]). On the first test the instrument displayed no reading. A second sample was taken and the Intoxilyzer displayed and then printed out a reading of .217 and the words "deficient sample — value printed was highest obtained.”
 

 Defendant sought to suppress the results of the Intoxilyzer test but the trial court determined that any irregularity in the sample went to the weight to be accorded the reading, not its admissibility. The jury found defendant guilty of driving while intoxicated in violation of Vehicle and Traffic Law § 1192 (2) (driving with more than .10% alcohol in the blood), § 1192 (3) (common-law intoxication) and various other traffic offenses. The Appellate Term, viewing the reading as improperly received because the test was incomplete, modified by vacating the conviction under section 1192 (2) and dismissing that count and otherwise affirmed. The People and defendant were granted leave to appeal and cross appeal by a Judge of this Court.
 

 At trial the officer administering the test and the Technical Supervisor of Central Testing testified. They explained that the Intoxilyzer is an instrument that measures blood alcohol as reflected by the alcohol content of the air exhaled from a subject’s lungs by passing a beam of infrared light through the air sample captured in the device’s chamber. The Intoxilyzer takes a reading every six tenths of a second as the subject breathes into it, thus measuring how the alcohol content in the sample changes with the passage of time as the air in the chambers comes from progressively deeper parts of the subject’s lungs. Because the instrument measures the rate of change in the alcohol content, and not just the absolute amount, the Intoxilyzer can detect "mouth alcohol” — a sudden sharp rise in the alcohol content, followed by a sharp decline
 
 *845
 
 —and can also detect when the alcohol concentration reaches a level state, indicating that "deep lung air” is being analyzed. Deep lung air gives the most accurate reading because the air at the bottom of the lungs is the air nearest to the blood supply, and is in equilibrium with it. If mouth alcohol is detected, the test stops, the machine gives no reading, and registers "invalid sample”. Similarly, if the air flow is insufficient or not continuous, no reading is obtained. On the other hand, a reading is obtained on a "deficient sample”. The witnesses explained that in Intoxilyzer terminology a "deficient” sample is not an invalid sample, but merely one in which the subject did not breathe for a long enough period of time to reach sufficient deep lung air to give the most accurate reading obtainable.
 

 The technicians testified that a full sample — which includes a sufficient amount of deep lung air — will invariably give a reading that is equal to, or higher than, the reading obtained from a "deficient” sample or, conversely, the reading for a "deficient” sample will always be lower than or equal to that obtained from a full sample. In other words, any inaccuracy of result will work to the subject’s benefit. Moreover, the Intoxilyzer is calibrated to give a result that is always 10% lower than the true reading. Thus, the officers testified that defendant’s blood alcohol content was at least .217 on the night he was tested. With this uncontradicted testimony, and the officers’ further testimony that the Intoxilyzer was in proper working condition and that the test itself was properly administered, the People established a sufficient foundation for reception of the evidence. Once it was received, the jury was entitled to credit it to determine that defendant was driving with more than .10% alcohol in his blood in violation of section 1192 (2).
 

 Insofar as the cross appeal is concerned, the other evidence, apart from the Intoxilyzer results, was legally sufficient to establish that defendant was driving while intoxicated under the common-law standard.
 

 Chief Judge Kaye and Judges Simons, Titone, Bellacosa, Smith, Levine and Ciparick concur.
 

 Order modified in accordance with the memorandum herein and, as so modified, affirmed.