979 P.2d 1226

STATE of Idaho, Plaintiff–Respondent,

v.

Joseph K. MAZZUCA, Defendant–
Appellant.

No. 24683.

Court of Appeals of Idaho.

June 10, 1999.

Watson Law Offices, Coeur d'Alene, for appellant. John E. Redal argued.

Hon. Alan G. Lance, Attorney General; Alison K. Stieglitz, Deputy Attorney General, Boise, for respondent. Alison K. Stieglitz argued.

PERRY, Chief Judge.

Joseph K. Mazzuca appeals from the district court's appellate decision which affirmed the magistrate's denial of Mazzuca's motion in limine. Mazzuca contends that the magistrate erred when it denied his pretrial motion in limine to exclude the breathalyser test results for lack of foundation. We affirm.

I.

FACTS AND PROCEDURE

A Coeur d'Alene police officer arrested Mazzuca, believing him to be driving under the influence of alcohol (DUI). The officer transported Mazzuca to the police station and administered the Intoxilyzer 5000 breathalyser test. The officer instructed Mazzuca to blow continuously and as hard as he could into the mouthpiece, but Mazzuca blew short breaths.

The first breath sample registered .14 and included a message indicating the sample was "deficient." The second sample regis-

tered .11 and included the same message that the sample was "deficient." Mazzuca told the officer he could not blow again, and the officer ended the test.[1]

The state charged Mazzuca with DUI. He pled not guilty and requested a jury trial. Mazzuca filed a motion in limine to exclude the results of the breath tests, arguing that because the machine noted that the breath samples were deficient the state would be unable to lay the proper foundation to have the results admitted at trial. After an evidentiary hearing at which the officer and an expert testified, the magistrate denied the motion.

Mazzuca entered an I.C.R. 11 conditional guilty plea and appealed to the district court. The district court affirmed the magistrate's ruling and this appeal followed.

## II.

## DISCUSSION

### A. Arguments

Mazzuca concedes that the officer followed the standard operating procedures for administering the breathalyser test in this case. However, Mazzuca claims that because the results indicated there was a deficient sample given, there was an "incorrect condition" involved in the test and the results should be excluded.

■ In order to have the results of a breath test admitted as evidence, the state must establish at trial that the administrative procedures which ensure the reliability of that test have been met. *State v. Utz*, 125 Idaho 127, 129, 867 P.2d 1001, 1003 (Ct.App. 1993). The Operator's Training Manual for the Intoxilyzer 5000 states that a "deficient sample" occurs when the subject fails to supply an adequate breath sample within three minutes. A deficient sample is an "incorrect operational procedure or condition" according to the manual. Mazzuca argues that because the samples were the result of an "incorrect condition," the results should be inadmissible under *Utz* as their reliability

cannot be established. Therefore, Mazzuca contends the magistrate erred when it denied Mazzuca's pre-trial motion in limine requesting that the breath test results be excluded.

The magistrate denied Mazzuca's motion in limine concluding that Mazzuca failed to meet his burden of proving that the tests were obtained without following proper foundational procedures for the Intoxilyzer 5000 and failed to prove the Intoxilyzer 5000 was improperly calibrated. The district court affirmed.

### B. Standard of Review

■ On review of a decision of the district court, rendered in its appellate capacity, we examine the record of the trial court independently of, but with due regard for, the district court's intermediate appellate decision. *State v. Bowman*, 124 Idaho 936, 939, 866 P.2d 193, 196 (Ct.App.1993).

This Court has previously explained:

Compliance with the requisite standards and methods for administration of the Intoximeter test is a foundational prerequisite to having the test results admitted into evidence. Accordingly, resolution of this issue turns on the identification and construction of the regulations governing the administration of a breath test.... This is a question of law over which the district court and this Court exercise free review.

*State v. Remsburg*, 126 Idaho 338, 339, 882 P.2d 993, 994 (Ct.App.1994) (citations omitted).

### C. Analysis

■ Under I.C. § 18–8004, certain foundational elements for alcohol concentration tests need not be presented by the state at trial unless such elements are disputed. *State v. Bell*, 115 Idaho 36, 39, 764 P.2d 113, 116 (Ct.App.1988). In this case, Mazzuca's motion in limine challenged the reliability of the test and placed the foundational element at issue. Therefore, the magistrate was called upon to determine whether there was a sufficient foundational showing of the accu-

---

1. The officer considered this a refusal, but did not seize Mazzuca's driver's license pursuant to I.C. § 18–8002(4)(a) because two test results already indicated that Mazzuca was above the legal blood alcohol content level for driving a vehicle.

racy of the testing procedure to allow admission of the test results. The admissibility of a breath test result pursuant to I.C. § 18–8004(4) requires "adequate foundation evidence consisting either of expert testimony or a showing that the test was administered in conformity with the applicable test procedure." *Bell,* 115 Idaho at 39–40, 764 P.2d at 116–17.

■ The Idaho appellate courts have never been asked to decide whether a "deficient" sample from the Intoxilyzer 5000 machine is sufficiently reliable to be admissible at trial. However, other state courts have considered this question, and we may properly look to their opinions for guidance. *See State v. Garrett,* 119 Idaho 878, 880 n. 3, 811 P.2d 488, 490 n. 3 (1991); *State v. Hartwig,* 112 Idaho 370, 375, 732 P.2d 339, 344 (Ct.App. 1987). These other states have concluded that a result which indicates the breath sample was deficient remains admissible. where the test was performed in accordance with the methods and standards approved by the state and where the Intoxilyzer 5000 was properly calibrated. *People v. DeMarasse,* 85 N.Y.2d 842, 623 N.Y.S.2d 845, 647 N.E.2d 1353 (1995) (The state lays a sufficient foundation when the evidence shows the test is properly administered and the Intoxilyzer 5000 is working properly, even though the breath sample is deficient.); *State v. Conrad,* 187 W.Va. 658, 421 S.E.2d 41 (1992) (Breath test results are properly admitted into evidence even though a deficient breath sample is given when the test is administered in accordance with the methods and procedures approved by the state department of health and where deputy testifies that a "deficient sample" gives an accurate reading of the breath sample produced.); *Harris v. State,* 601 So.2d 1099 (Ala.Crim.App.1991) (A "deficient sample" reading on the Intoxilyzer 5000 does not affect the admissibility of the test results but can affect the weight accorded this evidence.); *State v. Wilkinson,* 181 W.Va. 126, 381 S.E.2d 241 (1989) (Admission of Intoxilyzer 5000 results are not prejudicial when the state shows that the test is administered in accordance with standards approved by the state department of health and a police officer testifies the "deficient sam-

ple" indication does not affect the validity of the results.).

In this case, the arresting officer testified that Mazzuca partially completed two breath tests. Each test result indicated that Mazzuca had an alcohol content above the legal limit for driving, but the breath samples were deficient samples. The officer testified that the samples were deficient because Mazzuca failed to blow continuously into the instrument for a sufficient period of time.

■ Chester Park, a criminologist for the Idaho Department of Law Enforcement, Bureau of Forensic Services, was also called to testify on the Intoxilyzer 5000. Park stated that the Intoxilyzer 5000 measures blood alcohol as reflected by the alcohol content of the air exhaled from a subject's lungs. As the subject continues to blow into the machine, the air filling the chambers comes from progressively deeper parts of the subject's lungs. Deep lung air, the last amount of air displaced from a subject's lungs, most accurately represents the true alcohol content of the subject. Park testified that the objective with each test is to obtain deep lung air from the subject.

Park further explained that a deficient sample is not an invalid sample, but merely one in which the subject did not breathe for a long enough period of time to reach sufficient deep lung air to give the most accurate reading obtainable. Park affirmed that the Intoxilyzer 5000 measures accurately the sample presented, even though it is not a deep lung air sample. Therefore, Park opined there was no possibility that the samples could have been less than .14 and .11 or that the volume of air presented to the Intoxilyzer affected the accuracy of the result. *See, e.g., DeMarasse,* 623 N.Y.S.2d 845, 647 N.E.2d at 1354 (An expert testified that the results of a deficient sample will always be lower than or equal to the result obtained from a deep lung air sample.); *Conrad,* 421 S.E.2d at 44 (A deputy testified that the results of a deficient sample were accurate for the sample blown and that the result would have been higher had the subject filled the canister with his breath.); *Harris,* 601 So.2d at 1102 (A trooper testified that the deficient sample reading was accurate on the sample given and would

have been at least the level given if the subject had completed the test.).

Mazzuca concedes that the arresting officer followed the applicable standards and test procedures. Mazzuca does not claim the officer deviated from the required procedures and does not assert that the Intoxilyzer 5000 was functioning improperly. Mazzuca blew .14 and .11 and both test results were from deficient samples. The samples were deficient because Mazzuca failed to complete the tests as requested. Thus, for the purposes of this issue, Mazzuca's case is indistinguishable from *DeMarasse, Conrad, Harris* and *Wilkinson*, where the courts held that the state laid sufficient foundation when it established that the test was properly administered, even though the results indicated that the breath samples were "deficient." Mazzuca has failed to present any evidence that the deficient sample reading made the test results unreliable.

Therefore, under the cited authority, we conclude the magistrate properly denied the motion in limine, finding that Mazzuca had failed to prove the state would be unable to lay proper foundation for the breath test results at trial. The magistrate's denial of Mazzuca's motion in limine is therefore affirmed.

Judge SCHWARTZMAN, concurs.

Judge LANSING, DISSENTING.

I respectfully dissent because I cannot conclude that an adequate foundation for the Intoxilyzer 5000 test results was laid *in this case.*

With respect to tests for alcohol concentration under Idaho Code § 18–8004, the State must provide foundation evidence consisting of either expert testimony or evidence that the test was administered by a method approved by the Department of Law Enforcement and in conformity with the Department's approved procedures. *State v. Charan,* 132 Idaho 341, 971 P.2d 1165 (Ct. App.1998); *State v. Bell,* 115 Idaho 36, 39–40, 764 P.2d 113, 116–17 (Ct.App.1988). Here, it is undisputed that the breath sample tests were not obtained in compliance with Department-approved procedures because

the defendant did not blow into the Intoxilyzer 5000 correctly and the machine therefore indicated it had received deficient samples. The adequacy of the foundation in this case thus turns upon the testimony of the expert witness.

The admissibility of scientific or technical evidence is governed by Idaho Rule of Evidence 702, which specifies that a qualified expert may testify to scientific or technical knowledge if such evidence "will assist the trier of fact to understand the evidence or to determine a fact in issue." Therefore, the foundational issue here is whether the Intoxilyzer 5000 test results have been shown to be sufficiently reliable and probative that they would be helpful to a jury in resolving the factual issues of the case.

In my view, the expert's testimony falls short of showing that the breath test results would be helpful to the jury in determining whether Mazzuca was driving under the influence of alcohol, as that offense is defined in I.C. § 18–8004. The expert testified that the Intoxilyzer 5000 accurately measured the alcohol content of the *air samples presented,* but the inadequacy of those samples to accurately reflect the true breath alcohol concentration of the defendant is the very reason that the tests did not comply with Department standards. The correct foundational query is not merely whether the machine accurately tested the samples that were given, but also whether those samples accurately reflect the subject's alcohol concentration as that term is used in I.C. § 18–8004. The expert gave no testimony on this second part of the inquiry. Unlike the experts in some of the cases from other jurisdictions cited in the majority opinion, the witness here did not opine that the results of a deficient sample will always be lower than or equal to the results obtained from a deep lung air sample. Indeed, the expert stated that the deficient samples "may not represent what we refer to as deep lung air." From this foundational testimony, one cannot ascertain whether the alcohol content of the deficient samples bears any relationship to the result that would have been achieved with an adequate breath sample. It is a small, but in my judgment criti-

cal, omission from the foundational evidence presented by the State.

To bolster its holding that this foundation suffices, the majority opinion relies upon several cases from other jurisdictions where the expert testimony was more complete. In my view, this reliance is misplaced, for expert testimony given in other cases cannot substitute for an evidentiary foundation properly presented before the magistrate. I recognize that in an Idaho Supreme Court decision, *State v. Garrett*, 119 Idaho 878, 811 P.2d 488 (1991), the plurality opinion appears to have relied upon decisions from other jurisdictions, and evidence presented in those cases, to determine that the horizontal gaze nystagmus (HGN) test was reliable and admissible. However, the author of that opinion applied the *Frye*[1] test for the admissibility of scientific evidence, a test which turned upon whether the evidence was of a type generally accepted as reliable in the scientific community. The opinion relied upon decisions from elsewhere to determine that the HGN test was based on a generally accepted scientific theory and therefore satisfied the *Frye* standard. In separate opinions, two justices expressed their disagreement with use of the *Frye* test, stating that it had previously been rejected by the Idaho Supreme Court, and a third justice concurred in the result without joining in the plurality opinion. Since then, the Idaho Supreme Court has made it crystal clear that the *Frye* test is not to be utilized as the standard for admission of scientific or technical evidence. *See State v. Faught*, 127 Idaho 873, 876, 908 P.2d 566, 569 (1995). Rather, the proper standard is that stated in I.R.E. 702. *Id.; State v. Gleason*, 123 Idaho 62, 65, 844 P.2d 691, 694 (1992). Hence, the purpose for which the *Garrett* plurality opinion consulted cases from other jurisdictions pertained to a foundation test that is no longer used in this state.

In *Faught*, the Idaho Supreme Court confirmed that the correct approach regarding foundation for scientific evidence is that which it had taken in *State v. Crea*, 119 Idaho 352, 806 P.2d 445 (1991). In *Crea*, where the issue was the admissibility of breath tests conducted with the Intoximeter 3000, the Court stated, "We recognize and agree that the Intoximeter 3000 has gained scientific acceptance in Idaho as noted in *State v. Wilson*, [116 Idaho 771, 780 P.2d 93 (1989) ], and in numerous other jurisdictions as observed in *State v. Hartwig*, [112 Idaho 370, 732 P.2d 339 (Ct.App.1987) ], *however, use of test results from the Intoximeter 3000 in the courts of this state remains subject to proper foundation and evidence being presented.*" *Crea*, 119 Idaho at 354, 806 P.2d at 447. Thus, the admissibility of the Intoxilyzer 5000 tests at issue here turns upon the sufficiency of the foundational testimony presented to the magistrate *in this case*, not information contained in decisions from other courts.

If the necessary foundation could be laid to establish that the alcohol concentration readings on the deficient breath samples were necessarily lower than or equal to the concentration that would have been found in a deep lung air sample, the test results would meet the Rule 702 standard of reliability and usefulness to determine whether the defendant had an alcohol concentration in excess of the legal limit specified in I.C. § 18–8004. However, that foundation was not presented in this case.

---

1. *Frye v. United States*, 293 F. 1013 (D.C.Cir. 1923).