COMMONWEALTH of Kentucky,
Appellant,

v.

Chad DAVIS, Appellee.

No. 1999–SC–0755–CL.

Supreme Court of Kentucky.

Aug. 24, 2000.

Discretionary Review Granted
by Supreme Court Aug. 24, 2000.

Teressa L. Elliott, Assistant Campbell County Attorney, Crescent Springs, Laurie B. Dowell, Assistant Campbell County Attorney, Newport, for Appellant.

Jon Alig, Thomas G. Alig, Vincent and Alig, Covington, for Appellee.

WINTERSHEIMER, Justice.

Pursuant to CR 76.37(10), the Commonwealth seeks certification of the law on the following questions:

1) Is an Intoxilyzer result admissible in a prosecution under KRS 189A.010(1)(a) and/or (e), where the subject testing component has been shown to be in proper working order, but the calibration component showed out of tolerance readings on other dates?

2) Does the decision in *Owens v. Commonwealth*, Ky., 487 S.W.2d 897 (1972) require the prosecution to demonstrate that all possible components of the machine are in proper working order on dates other than the date of the arrest as a condition precedent to the admission of the Intoxilyzer results into evidence?

The critical issue in reaching a decision in this matter is the import to be given to 500 KAR 8:020 Section 2.(1), which provides as follows:

A breath alcohol instrument shall be accurate within plus or minus 0.005 alcohol concentration units reading to be certified. To determine accuracy of instruments, a technician trained or employed by the Forensic Laboratory Section of the Department of State Police shall perform analyses using a certified reference sample at regular intervals.

500 KAR 8:030, Section 1.(2) requires the following:

A breath alcohol concentration test shall consist of the following steps in this sequence:

(a) Ambient air analysis;

(b) Alcohol simulator analysis;

(c) Ambient air analysis;

(d) Subject breath sample analysis; and

(e) Ambient air analysis.

Chad Davis, who was under 21 years of age at the time, was charged with a violation of KRS 189A.010, Driving Under the Influence, and had an Intoxilyzer reading of .073 and was therefore charged under KRS 189A.010(1)(e).

Davis moved to suppress the Intoxilyzer results on the grounds that the machine had registered out of tolerance readings on the calibration component 18 times between November 1998 and May 1999, and therefore the requirements of *Owens, supra*, had not been satisfied.

In district court, the Commonwealth and the defendant agreed to incorporate into this case all evidence and pleadings from *Commonwealth v. Freyler*, Campbell District Court, First Division, Case No. 99–M–00166 (1999). Factual differences relate to the identity of the defendant, the date of the Intoxilyzer test and additional evidence presented. Our defendant was a minor, Freyler was an adult. At the Freyler suppression hearing, a technician employed by the Kentucky State Police testified that he had examined the testing component that determines the alcohol content for the calibration and subject tests both before and after the Davis test, and had determined that the testing component was in proper working order. The

technician stated that the calibration component which supplies the sample for the calibration test was not in proper working order. In this case, the district court suppressed the Intoxilyzer results citing *Owens* for the principle that the Commonwealth is required to prove that the machine, including all of its components, was in proper working order at the time of the test. In the Freyler matter, the same judge denied suppression.

The Commonwealth argues that *Owens* needs to be reexamined in the light of new legislative requirements and that the district court erred in ruling that the Intoxilyzer result was inadmissible instead of holding that the result should be admitted with any perceived problems going to the weight of the evidence. This Court granted the request for certification.

Counsel for Davis argues that the test results should not be admitted where the appropriate statutory and regulatory foundation requirements have not been satisfied and the Intoxilyzer machine in total has been stipulated by the prosecution not to be in proper working order. Davis contends that what is required is compliance with the statute and regulations as provided by *Commonwealth v. Wirth*, Ky., 936 S.W.2d 78 (1996). Davis claims that under *Marcum v. Commonwealth*, Ky., 483 S.W.2d 122 (1972), *Owens* and *Wirth*, *supra*, the simulator is needed to show that the machine is in proper working order, and, consequently, the prosecution cannot satisfy the requirements for admissibility. Thus, he maintains that the suppression order of the district court should be affirmed and the law should be so certified.

## I. Admission of Intoxilyzer Results

■ The Intoxilyzer test results should have been admitted into evidence when the calibration unit and the subject testing component have been shown to be in proper working order on the testing date, despite the fact that the calibration component may have been out of tolerance on

other dates, because the results are relevant evidence pursuant to KRE 401 and KRE 402, as well as scientific evidence under KRE 702. In this instance, the calibration unit and the subject testing component were in proper working order on the date of the test.

Intoxilyzer test results have been admitted into evidence in innumerable cases. *See Wirth; Owens; See also* KRS 189.005 et seq. KRE 402 provides that all relevant evidence is admissible and KRE 401 defines relevant evidence as that which has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. In a DUI prosecution, the Intoxilyzer test results are relevant. KRE 702 authorizes the use of such tests to assist the trier of fact.

■ As an example, In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the United States Supreme Court determined that cross-examination, the presentation of contrary evidence and instructions on the burden of proof are the appropriate means of challenging new and/or not widely accepted evidence that is otherwise admissible. Consequently, any Intoxilyzer test result should be admitted into evidence when the calibration unit and the subject testing component have been shown to be in proper working order on the testing date, and any challenges thereto should be handled by cross-examination and the presentation of contradictory evidence.

## II. Weight of Evidence

■ The Intoxilyzer test results should be admitted into evidence, and any problems with the simulator component of the device should go to the weight of such evidence, rather than its admissibility, when the calibration unit and testing unit are in proper working order on the testing

date. Previous shortcomings should go to the weight of the evidence only.

This Court, in *Marcum, supra*, when considering the admissibility of alcohol breath tests, held that, among other requirements, alcohol concentration tests are admissible if the prosecution shows that the machinery was "properly checked and in proper working order at the time of conducting the test."

The precise problem presented here is that the simulator component of the Intoxilyzer, as distinguished from the alcohol testing unit, was not in proper working order on dates other than the date of the test in question. The evidence indicates that the calibration unit is totally independent of the testing unit, and that the testing unit will provide an accurate reading even if the calibration unit is turned off.

*King v. Commonwealth*, Ky.App., 875 S.W.2d 902 (1993) states in part that any machine, including an Intoxilyzer, is going to have a margin of error ... The question then becomes how much of a margin of error will be tolerated before the reading is no longer credible or has probative value. The Court held that in its opinion, the margin of error should be considered to determine the probative value of the Intoxilyzer reading. The Court of Appeals panel in *King, supra*, observed that to exclude a reading with a possible error of .005 would be requiring the Commonwealth to prove in the realm of beyond any doubt. Such a standard is more than that required by *Owens* for admissibility.

### III. Other Jurisdictions

A number of other states have considered similar problems. *See Gaston v. State*, 227 Ga.App. 666, 490 S.E.2d 198, 201 (1997) to the effect that no procedure is infallible and an accused may always introduce evidence of the possibility of error or malfunction but that such evidence would relate to the weight rather than the admissibility of the breath test. *Hammontree v. State*, 236 Ga.App. 342, 512 S.E.2d 57 (1999), stated that the fact that testing has

some margin of error relates to the weight rather than admissibility of test results. *Cawthon v. State*, 235 Ga.App. 791, 510 S.E.2d 586 (1998), noted that a Breathalyzer's margin of error relates to the weight rather than to the admissibility of the results.

*State v. Guthmiller*, 350 N.W.2d 600 (N.D.1984), held that problems with a Breathalyzer could be overcome by expert testimony if each of the individual mistakes had an insignificant effect on the result. Here, the lab technician responsible for maintaining the Intoxilyzer testified that any perceived problems with the machine were insignificant because the calibration unit is totally separate from testing unit and that the testing unit operates independently.

*Kercho v. State*, 948 S.W.2d 34 (Tex. App.–Houston 14th District 1997), recites the requirements of proper working order on the day of the test, periodic supervision and testimony by a qualified witness. In *State v. Mazzuca*, 132 Idaho 868, 979 P.2d 1226 (App.1999), the Court of Appeals reviewed other jurisdictions and determined that the test results were admissible even with deficient breath samples where the test was properly administered and the machine properly calibrated.

Other cases of interest on this matter may be found in *Gidey v. State*, 228 Ga. App. 250, 491 S.E.2d 406 (1997); *State v. Woods*, 285 Mont. 124, 947 P.2d 62 (1997) and *Volk v. U.S.*, 57 F.Supp.2d 888 (Northern District of Cal.1999). In *Volk, supra*, the court noted that the admissibility and general reliability of Intoxilyzer test results are well established, and the methodology has achieved wide acceptance within the scientific community.   .

This Court certifies the law to the effect that an Intoxilyzer test result is admissible in a prosecution pursuant to KRS 189A.010(1)(a) and or (e) where the calibration unit and the subject testing component have been shown to be in proper working order on the testing date, despite

the fact that the calibration component may have been out of tolerance on other dates. The decision of this Court in *Owens v. Commonwealth* is clarified to the extent that the Intoxilyzer results may be admitted when the alcohol test component and calibration unit were in proper working order on the day of the test but the independent calibration unit was out of tolerance on other days. When the Intoxilyzer calibration unit and testing unit are in proper working order on the testing day, any earlier problems should go to the weight of the evidence and not its admissibility. In the *Davis* case, the calibration check attached to the citation shows .098 which is within the required accuracy range between .095 and .105.

We find the decision of the trial judge in suppressing the Intoxilyzer reading was in error and the results of the test should be admitted into evidence consistent with this certification.

GRAVES, JOHNSTONE, KELLER and WINTERSHEIMER, JJ., concur.

COOPER, J., dissents by a separate opinion in which LAMBERT, C.J., and STUMBO, J., join.

COOPER, Justice, dissenting.

The majority opinion holds that "an Intoxilyzer test result is admissible in a prosecution pursuant to KRS 189A.010(1)(a) and/or (e) where the calibration unit and the subject testing component have been shown to be in proper working order on the testing date, despite the fact that the calibration component may have been out of tolerance on other dates." Op. at 109–10. I am in agreement with this proposition and it comports with our holding in *Owens v. Commonwealth*, Ky., 487 S.W.2d 897 (1972):

> It is generally held that the prosecution has the burden of proving tests such as the breathalyzer were correctly administered. As a minimum this proof must show that the operator was properly trained and certified to operate the machine *and that the machine was in proper working order* and that the test was administered according to standard operating procedures.

*Id.* at 900 (emphasis added).

However, the Commonwealth has stipulated in this case that its only expert witness with respect to this issue tested the machine and reported "that the calibration component which supplied the sample for the calibration tests referenced above, *including the calibration test for this defendant,* was not in proper working order." (Emphasis added.) Thus, the district judge properly suppressed the results of this particular Intoxilyzer test.

LAMBERT, C.J., and STUMBO, J., join this dissenting opinion.