**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 38579**

STATE OF IDAHO,                                    )
                                                   )     **2012 Opinion No. 51**
     **Plaintiff-Respondent,**                      )
                                                   )     **Filed: September 28, 2012**
v.                                                 )
                                                   )     **Stephen W. Kenyon, Clerk**
TIFFANY LEIGH TURBYFILL,                           )
                                                   )
     **Defendant-Appellant.**                       )
                                                   )

Appeal from the District Court of the First Judicial District, State of Idaho, Bonner County. Hon. Steven C. Verby, District Judge.

Order denying motion to dismiss DUI charge, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Spencer J. Hahn, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

_____

LANSING, Judge

Tiffany Leigh Turbyfill appeals from her conviction for felony driving under the influence of alcohol. Turbyfill argues that pursuant to Idaho Code § 18-8004(2), the State is prohibited from prosecuting her because in breath testing, one of her three breath samples yielded an alcohol concentration of less than the legal limit. The district court denied Turbyfill's motion to dismiss, and she challenges that order.

**I.**

**BACKGROUND**

Turbyfill was stopped by Deputy Reynolds of the Bonner County Sheriff's Department for operating a vehicle with a broken taillight. Because Turbyfill smelled of alcohol and admitted that she had been drinking, Deputy Reynolds asked her to submit to breath testing, utilizing an Alco-Sensor III testing instrument. Turbyfill's first breath sample yielded an alcohol concentration reading of .054, and her second sample a reading of .108. Because of the

1

divergence between these two samples, Reynolds had Turbyfill provide a third breath sample, which showed a .110 alcohol content. As a result of the samples that exceeded the .08 legal limit, Turbyfill was charged with felony driving under the influence of alcohol (DUI), I.C. §§ 18-8004(1)(a), 18-8005(5).

Turbyfill filed a motion to dismiss the charge, asserting that because her first breath test showed an alcohol concentration of less than .08, the State was prohibited from prosecuting her for DUI. She urged that dismissal was required by I.C. § 18-8004(2), which generally disallows prosecution for DUI if the person had an alcohol concentration of less than 0.08 as shown by analysis of his blood, urine, or breath. At the hearing on Turbyfill's motion, the State called as witnesses Deputy Reynolds and Jeremy Johnston, a forensic scientist. Deputy Reynolds testified that he administered the breath testing properly and that he had no reason to believe that the testing instrument was malfunctioning in any respect. Mr. Johnston's testimony centered upon the extreme variance between the alcohol concentration measured in Turbyfill's first breath sample and her two following breath samples. His testimony included the following:

> Q. Okay. And what would be the potential explanations for why the first and second sample were not within a .02 of one another?[1]
>
> A. There's several reasons why you could have a sampling event where the first and second sample weren't within the .02. But the .02 correlation is put into place to eliminate external sources of alcohol contamination either from stomach contents or from actual drinking alcohol, radio frequency interference, inconsistent sample delivery or inconsistent sample selection by the officer, and actual instrument calibration or malfunction.
>
> Q. Okay. And what specifically are you referring to when you make reference to sample selection by the officer on this particular incident?
>
> A. In this particular instance the Alco-Sensor III, which is in essence officer operated, the officers you know instruct the individual or instructed to have the individual blow until they get down to where they're providing a deep lung air sample when they're about to run out of breath. At that point the officer is instructed to push the read button which draws in a single point in time sample from the individual's expired breath and analyzes that sample. If the officer is I guess a little quick on the trigger and presses the button too early and the person is providing either just mouth air or shallow lung air, you will get an

---

[1] The standard operating procedures for the Alco-Sensor III, adopted by the Idaho State Police, call for testing of a third breath sample if the first two results differ by more than .02. Idaho State Police, Standard Operating Procedure: Breath Alcohol Testing 3.2.3 (Rev. February 2008); Idaho State Police, Alco-Sensor III: Operator's Training Manual, p. 5 (Rev. August 2006).

underrepresentation of what the person's true alcohol content--breath alcohol content would have been.

. . . .

Q.    And when the sample turns out to be a .110 and what is the significance of the three separate samples in this testing process?

A.    Well, after the first two samples were obtained, you had a .054 I believe is the number and a .108 so in that situation since they weren't within the .02, you have one of two possibilities.  You either have the .108 was overreported by an external contamination source of error or the .054 was underreported by potential inconsistent sample delivery or sample selection at that point.  The third sample is then requested to try to troubleshoot and find out which one of those two is the valid sample.

In this case the third sample was a .110; is that correct?

Q.    .110.  Correct.

A.    Okay.  .110.  That would lead me to believe that the .054 was an underreporting situation, whether it was from inconsistent sample deliver[y] or inconsistent sample selection by the officer.

. . . .

Q.    Okay.  So based on the samples that were provided in this series, this particular test sequence, in your opinion is one of those samples an invalid sampling?

A.    I would say that the .054 was the aberration of the three.  The first two samples not being within the .02.  there was a source of error associated with one of the two samples.  The first [sic] sample in essence validates the second sampling event and points to the first sample, the .054 being an aberration in the testing sequence.

. . . .

In this particular scenario I called it an aberration because after the first two samples were obtained there was clear evidence from the results that one of the two was an aberration and the third sample would then lend weight to which one was the aberration.

After all the evidence was heard, the district court denied Turbyfill's motion to dismiss, concluding that the motion presented an issue of fact that would require a jury determination at trial.  The jury ultimately found Turbyfill guilty of DUI, and she appeals from the resulting judgment.  She challenges only the denial of her motion to dismiss the charge.

## II.

## ANALYSIS

Turbyfill asserts that dismissal of her DUI charge is required by I.C. § 18-8004(2), which states, "Any person having an alcohol concentration of less than 0.08 . . . as shown by analysis of his blood, urine, or breath, by a test requested by a police officer shall not be prosecuted for driving under the influence of alcohol . . . ."  This Court exercises free review over the

application and construction of statutes. *State v. Reyes*, 139 Idaho 502, 505, 80 P.3d 1103, 1106 (Ct. App. 2003). Where the language of a statute is plain and unambiguous, this Court must give effect to the statute as written, without engaging in statutory construction. *State v. Burnight*, 132 Idaho 654, 659, 978 P.2d 214, 219 (1999); *State v. Escobar*, 134 Idaho 387, 389, 3 P.3d 65, 67 (Ct. App. 2000). The language of the statute is to be given its plain, obvious, and rational meaning. *Burnight*, 132 Idaho at 659, 978 P.2d at 219. If the language is clear and unambiguous, there is no occasion for the court to resort to legislative history, or rules of statutory interpretation. *Escobar*, 134 Idaho at 389, 3 P.3d at 67. When this Court must engage in statutory construction because an ambiguity exists, it has the duty to ascertain the legislative intent and give effect to that intent. *State v. Beard*, 135 Idaho 641, 646, 22 P.3d 116, 121 (Ct. App. 2001). To ascertain such intent, not only must the literal words of the statute be examined, but also the context of those words, the public policy behind the statute and its legislative history. *Id.* It is incumbent upon a court to give an ambiguous statute an interpretation which will not render it a nullity. *Id.* Constructions of an ambiguous statute that would lead to an absurd result are disfavored. *State v. Doe*, 140 Idaho 271, 275, 92 P.3d 521, 525 (2004).

Turbyfill's argument that the test result of less than .08 on her first breath sample *ipso facto* prohibits prosecution by operation of I.C. § 18-8004(2) ignores the evidence that this test result was not an accurate measure of her actual breath alcohol concentration. Mr. Johnston's testimony indicated that the inconsistency between the .054 alcohol concentration result for Turbyfill's first breath sample and the results for her two subsequent samples was due to the initial test being based upon a sample that contained only mouth air or shallow lung air, and not the deep lung air that is necessary for an accurate measure of alcohol concentration. This, according to Johnston, would result in an underrepresentation of the true alcohol content.

In our view, Section 18-8004(2) does not prohibit prosecution where the test result of less than .08 was demonstrably inaccurate or unreliable. The same statute states that "[a]ny person . . . whose test result is determined by the court to be unreliable or inadmissible against him, may be prosecuted for driving or being in actual physical control of a motor vehicle while under the influence of alcohol . . . on other competent evidence." I.C. § 18-8004(2). Thus, the statute expressly contemplates that only breath samples that are reliable will be utilized in

4

application of the DUI laws.[2]  Moreover, the purpose of the DUI statutes--to prevent accidents and hazards caused by intoxicated drivers and to punish those drivers who choose to endanger themselves and others--would not be served if test results on inadequate breath samples that understate the driver's true breath alcohol concentration could be used to trigger the Section 18-8004(2) prohibition against prosecution.  Such an application of the statute would give drivers an incentive to produce deficient breath samples yielding inaccurate measures of breath alcohol content.  Interpretation of the statute in a manner that would validate inaccurate breath test results and encourage intoxicated drivers to manipulate the breath testing procedures in order to elude punishment would yield an absurd result that plainly was not the intent of the Idaho Legislature in adopting this provision of Section 18-8004(2).

Turbyfill argues, however, that a refusal to apply the Section 18-8004(2) bar against prohibition in her case would be inconsistent with this Court's decisions in *State v. Mills*, 128 Idaho 426, 913 P.3d 1196 (Ct. App. 1996), and *State v. Mazzuca*, 132 Idaho 868, 979 P.2d 1226 (Ct. App. 1999).  We disagree.  In *Mills*, the appellant provided two breath samples.  The first sample showed an alcohol concentration of .10, while the second measured .09.  *Id.*  At that time, the legal limit for alcohol concentration was .10, so the .09 test result enabled Mills to invoke the I.C. § 18-8004(2) bar against prosecution.  *Mills*, 128 Idaho at 429, 913 P.3d at 1199.  The State contended that for purposes of I.C. § 18-8004(2), a "test" consists of two samples.  Therefore, the sole issue in *Mills* was whether both samples must be below the legal limit in order for the Section 18-8004(2) bar against prosecution to apply.  This Court held that if the BAC level of

---

[2]     That I.C. § 18-8004(2) authorizes reliance only on accurate and reliable alcohol concentration tests is further confirmed by legislative history.  In 1983, the House Committee in charge of redrafting I.C. § 18-8004 noted the purpose of the statute:

> First the committee wants to clarify that the analysis of blood, urine, breath or other bodily substances for evidence of alcohol, drug or other intoxicating substances need not be chemical analysis.  Any analysis which is *reliable* is sufficient.  This is done specifically to permit any *reliable* method of examination to be employed.  Second, the committee wants to clarify that an individual may be prosecuted on the "other competent evidence standard" not only when he refuses to take an examination, but also when a court determines that the results of the examination are *unreliable or inadmissible* against him.  This will clarify that should the results of an evidentiary test be suppressed for any reason an individual may be prosecuted if there is other competent evidence of intoxication.

H. JOURNAL, 47th Legislature, 1st Sess. 196 (1984) (emphasis added).

any *valid* sample is less than 0.10, the driver cannot be prosecuted for DUI under Section 18-8004(2). *Mills*, 128 Idaho at 429, 913 P.2d at 1199. Although *Mills* held that a single test result below the legal limit is sufficient to effectuate the protection of Section 18-8004(2), the decision does not aid Turbyfill because in *Mills* it was undisputed that both breath samples provided valid, reliable measures of the accused's true alcohol concentration. Here, by contrast, the State presented extensive evidence that Turbyfill's first test should not be deemed accurate. Johnston testified that the differences between the first test and the two subsequent tests led him to the opinion that the first test was an aberration and underrepresented Turbyfill's true breath alcohol. Hence, the holding in *Mills* does not control the issue before us.

In the other case cited by Turbyfill, *Mazzuca*, we were required to decide whether tests based on deficient breath samples are admissible to *support* a prosecution for DUI under I.C. § 18-8004(2). The defendant had disregarded instructions to "blow continuously and as hard as he could into the mouthpiece," and instead blew short breaths. *Mazzuca*, 132 Idaho at 868, 979 P.2d at 1226. The first breath sample registered .14 and the second registered .11, but for both samples, the test instrument indicated that the sample was deficient. At trial, the State's expert explained that "a deficient sample is not an invalid sample, but merely one in which the subject did not breathe for a long enough period of time to reach sufficient deep lung air to give the most accurate reading obtainable." *Id.* at 870, 979 P.2d at 1228. A majority of this Court held that these tests were admissible into evidence, despite being based upon deficient samples, because the expert testimony and case law showed that alcohol concentration in the deficient samples *could not have been higher* than the alcohol concentration that would have been obtained from a proper deep lung air sample. *Id.* at 870-71, 979 P.2d at 1228-29. That is, although the test readings for the deficient samples may not have accurately reflected the defendant's true alcohol concentration as measured through deep lung air, they did establish that the defendant's true alcohol concentration was *at least* the level shown on the deficient samples, and therefore those tests constituted reliable evidence that Mazzuca's alcohol concentration *exceeded* the legal limit.

Turbyfill asserts that it would be inconsistent to hold that a deficient sample resulting from shallow lung air is valid and reliable when it benefits the State (because the deficient samples show per se intoxication), but unreliable and invalid when it would prevent prosecuting a driver. Turbyfill would be correct only if a deficient sample provided a true reflection of actual

breath alcohol concentration. Both the *Mazzuca* opinion and the evidence in this case show that such is not the case. Rather, a shallow breath test indicates only a minimum possible true alcohol concentration. Therefore, if the shallow breath sample is above .08, it suffices to show a violation of I.C. § 18-8004(1). But the converse is not true. A shallow breath sample testing at below .08 does not inherently show that the individual's true breath alcohol concentration is less than .08. Consequently, it does not *ipso facto* bar prosecution by the terms of Section 18-8004(2). Rather, if the State presents evidence challenging the accuracy of the test, a factual issue may be presented. Here, there was evidence from which a fact finder could conclude that the .054 test was not a valid measure of Turbyfill's true breath alcohol concentration. Therefore, the existence of the test did not require automatic dismissal by terms of I.C. § 18-8004(2).

Although Turbyfill does not raise it as a claim of error on appeal, one component of the trial court's decision warrants further comment. The trial court here did not resolve the factual issue presented by the State's evidence concerning the accuracy and reliability of the test on Turbyfill's first breath sample, but instead reserved that factual issue to the jury. We question the propriety of this resolution. Section 18-8004(2) mandates that a person having an alcohol concentration of less than .08 "*shall not be prosecuted* for driving under the influence of alcohol . . . ." (emphasis added). This directive indicates that the issue must be resolved by the court upon a motion from the defendant rather than being referred to a jury. If the resolution of any factual issues raised by a defendant's motion to dismiss had to be referred to a jury, then the defendant would be subjected to prosecution all the way through a jury trial instead of receiving the protection that the statute is intended to provide, which is freedom from criminal prosecution at all. In addition, the Section 18-8004(2) provision that "[a]ny person . . . whose test result *is determined by the court to be unreliable or inadmissible against him*, may be prosecuted for driving or being in actual physical control of a motor vehicle while under the influence of alcohol . . . ." contemplates that the trial court will make determinations of the reliability of concentration tests. However, because Turbyfill does not assert as an issue on appeal that the trial court erred by failing to resolve the factual issue itself, instead of allowing resolution by the jury, we do not address it further nor attempt to determine whether any remedy would be available at this juncture.

Having rejected Turbyfill's claim of error, we affirm the district court's order denying the motion to dismiss the charge.

Chief Judge GRATTON and Judge MELANSON **CONCUR.**