## IN THE COURT OF APPEALS OF IOWA

No. 16-0068
Filed February 8, 2017

**STATE OF IOWA,**
      Plaintiff-Appellee,

**vs.**

**WILLIAM EDWARD HUNT,**
      Defendant-Appellant.

_____

Appeal from the Iowa District Court for Dallas County, Bradley McCall, Judge.

A defendant appeals his conviction for operating while intoxicated. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Patricia A. Reynolds, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Kelli A. Huser, Assistant Attorney General, for appellee.

Considered by Vogel, P.J., and Tabor and Mullins, JJ.

**TABOR, Judge.**

William Hunt appeals his conviction for operating while intoxicated (OWI), alleging he was prejudiced by the jury's consideration of a computer-generated printout documenting his incomplete breath-test result. He also contends his trial counsel should have objected to statements made by the prosecutor in closing argument. Because Hunt is unable to show he was prejudiced in either regard, we affirm.

## I. Facts and Prior Proceedings

Trooper Thomas Clark with the Iowa State Patrol responded to a radio dispatch reporting an erratic driver traveling westbound on Interstate 80 near Waukee about 10 p.m. on January 9, 2015. The dispatcher had received multiple 911 cellular telephone calls from other motorists concerned about a pickup pulling a travel trailer that was "all over the road." Trooper Clark found a Chevy Avalanche in that area matching the callers' descriptions and pulled in directly behind it, observing "it was off on the right shoulder fully crossing into the left lane more than once." The trooper also noted the Avalanche was speeding: "It wasn't excessive speed for the Interstate system at least, probably upper 70s at that point, but it was still odd that a vehicle pulling an RV would be passing people, especially going into a curve." As the Avalanche was "traversing the curve, it began to fishtail." It appeared to the trooper that the driver was losing control and decided to pull him over "before it did crash or hit somebody."

Trooper Clark activated his lights and siren, but Hunt, the driver, continued traveling on the shoulder for another mile. When the trooper approached the vehicle, Hunt did not respond for "probably five seconds," so the trooper knocked

on the passenger front window. Hunt still did not react so the trooper opened the unlocked door. Hunt also was slow to gather his driver's license and proof of insurance, and the trooper could "smell a moderate odor of alcohol within the vehicle."

On account of the cold and windy conditions, Trooper Clark brought Hunt into his patrol car for a conversation. According to the trooper, Hunt displayed impaired balance and was "hugging close" to the patrol car for support. Once inside the patrol car, the trooper smelled a stronger odor of alcoholic beverage coming from Hunt. When the trooper asked Hunt several times if he had been drinking, Hunt answered with the non sequitur—"I'm just cruising."

The trooper conducted a horizontal gaze nystagmus (HGN) test inside the patrol car, which Hunt failed, registering a maximum of six clues indicating intoxication. The trooper also noticed Hunt's eyes were watery and bloodshot. Because of the bitter weather, the trooper conducted only one field sobriety test outside the car—the one-leg stand. Hunt swayed and put his foot down several times during the test, at one point nearly falling over. After the test, Trooper Clark assisted Hunt back into the car fearing he "was going to stumble into the ditch at that point."

The trooper placed Hunt under arrest for OWI, invoked implied consent, and requested a breath sample on the DataMaster DMT at just before midnight. In the trooper's view, Hunt did not "properly participate" in the DataMaster process:

> He was giving very short breaths, abbreviated, would start blowing lightly and then would stop, and I was verbally coaching him through it, telling him "You need to be a long, consistent breath."

> The DataMaster has an error tone when there's too low of flow, not a sufficient flow, it will make a tone advising that.
> It doesn't have to be an overly hard or forceful breath, but it's got to be a really long breath.

Hunt's weak and broken flow of air caused the DataMaster to emit an "alert tone" and when the machine had run through its cycle and was ready to accept a sample, it flashed a pop-up box asking "Subject refused? Yes or no." The trooper checked yes, indicating Hunt's refusal due to his "lack of participation." Hunt did not tell Trooper Clark that he had a breathing condition that would impact his ability to provide a breath sample.

The State charged Hunt with OWI, first offense, in violation of Iowa Code section 321J.2 (2015). His case came before a jury in December 2015. Defense counsel filed a motion in limine seeking to exclude testimony concerning results from the failed DataMaster test as unduly prejudicial under Iowa Rule of Evidence 5.403. In a pretrial hearing, defense counsel argued because the test was not completed, there was "no foundation for the result." He continued: "I understand they are not spitting out a number, but the very nature of testimony saying that there is alcohol in his breath is unfairly prejudicial to him."

The State resisted, explaining its plan to offer expert testimony from James Bleskacek, a criminalist with the Iowa Division of Criminal Investigation, concerning the insufficient breath volume, "meaning the defendant wasn't essentially blowing hard enough for the test to create a valid result." The State continued:

> At that point the officer actually is the one that deems it a refusal. But the machine does and is able to—even with small amounts of breath, is able to detect the presence of alcohol. My understanding is that although he could testify as to sort of a number in terms of

how we think of the breath alcohol volume, he will not do that. He can simply testify and will simply testify that there was alcohol present in the sample.

The State asserted the evidence was not unfairly prejudicial because the presence of alcohol in Hunt's system was probative of the issue of intoxication.

The district court overruled the defense motion in limine as to the failed DataMaster result, calling it "an evidentiary question." The court ruled:

If there is a sufficient foundation to get the result in, in other words, testimony by an expert that despite an incomplete test, the machine can accurately tell us whether there was some alcohol or no alcohol, I think that conclusion is admissible. But the State is going to have to lay a proper foundation as to whether or not the machine can actually tell us that.

At trial, defense counsel did not object when the State offered as an exhibit a printout showing Hunt's failed attempt to provide an adequate breath sample. The State also called criminalist Bleskacek, who described his primary responsibilities as "the maintenance and upkeep of the evidential breath instruments used throughout the State of Iowa," including the DataMaster used by Trooper Clark. Bleskacek testified that the DataMaster printout showed Hunt's name as the test subject and the machine's quality assurance information. The exhibit also featured "a graphical display of how the instrument viewed both the alcohol level and the subject's breathing into the instrument in real time."

Bleskacek explained that for a completed test the DataMaster requires a subject to produce about "three liters of air per minute" which is "just above the noise level of the detecter for that system. Not much more than a whisper." Looking at the chart on the State's Exhibit 3, Bleskacek opined that Hunt provided "a very poor quality breath" sample. Also based on that chart,

Bleskacek told the jury that the instrument measured some amount of alcohol in Hunt's breath. The State did not ask about the level of alcohol shown in the printout. Defense counsel did not object to Bleskacek's opinions during his testimony.

Hunt, a Minnesota native, took the stand in his own defense. He testified that on the January night he was stopped in Iowa he was heading "somewhere south" where it would be warmer. He described breathing problems and other health conditions related to his military service in the Persian Gulf. Hunt also recounted assaults he had suffered that injured his ankle and knees. He testified that when he was stopped by Trooper Clark, his thirty-foot travel trailer was swaying from the wind and he was looking for a place to pull over. Hunt also told the jury that before he was stopped he had consumed "a health drink"—"a chia drink from GNC" that "said it contained alcohol."

The jury returned a verdict of guilty. The district court sentenced Hunt to 365 days in jail, all but thirty days suspended, and one-year probation, along with a fine, court costs, surcharges, and attorney fees. Hunt now appeals.

## II. Scope and Standards of Review

We review claims of ineffective assistance of counsel de novo because they test the constitutionality of the proceedings. *State v. Webster*, 865 N.W.2d 223, 231 (Iowa 2015). Hunt's underlying claim concerning admission of evidence showing his failed DataMaster test, if preserved, would be reviewed for an abuse of discretion. *See State v. Huston*, 825 N.W.2d 531, 536 (Iowa 2013). An abuse occurs when the court exercises its discretion "on grounds or for reasons clearly

untenable or to an extent clearly unreasonable." *State v. Long*, 814 N.W.2d 572, 576 (Iowa 2012).

### III. Analysis

### A. DataMaster Printout

Hunt contends the district court abused its discretion in rejecting his request to exclude his failed DataMaster test as lacking "foundation for the result" and as unduly prejudicial under rule 5.403.[1]  The State argues that because the ruling on Hunt's motion in limine was not final as to the admissibility of the evidence, Hunt may only raise his evidentiary claim under an ineffective-assistance-of-counsel framework.  We agree the district court's ruling required additional action on the part of defense counsel to preserve error.  *See Webster*, 865 N.W.2d at 242 (finding evidentiary claim not preserved where limine ruling was only preliminary).  On appeal, Hunt floats an alternative argument that trial counsel was ineffective for not objecting during the testimony of Bleskacek, the State's DataMaster expert.  Accordingly, we examine this issue as ineffective assistance of counsel.

To succeed on his ineffective-assistance claim, Hunt must prove by a preponderance of the evidence both that trial counsel breached an essential duty and prejudice resulted.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Failure to prove either prong of the *Strickland* test is fatal to Hunt's claim.  *See State v. Dalton*, 674 N.W.2d 111, 119 (Iowa 2004).  While we often preserve

---

[1] That rule provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Iowa R. Evid. 5.403.

claims of ineffective assistance for postconviction relief proceedings, *see State v. Utter*, 803 N.W.2d 647, 651 (Iowa 2011), we find the record adequate to address the issue here.

Hunt alleges counsel breached a duty by not objecting when Bleskacek engaged in the following exchange with the prosecutor concerning the top line of the DataMaster printout (pictured in Exhibit 3 below):

> Q. Let's talk about that second line. What does that line indicate? A. The second line, or the higher line up there, indicates the alcohol level seen by the instrument while the subject is providing a breath.
> Q. Is that measured in real time, so to speak? A. It is.
> Q. And what assurances do we have that that's accurate? A. Well, that's the alcohol equivalent seen by filter 1, which is the ethanol filter of this instrument, seen at normal time. Had the test gone to completion, other safeguards would have activated to ensure that it truly was ethyl alcohol on his breath being seen on that. So since the test did not go to completion, some of those safeguards did not fire.

Exhibit 3



Hunt contends the expert's references to "other safeguards" that were not activated by the DataMaster "cast doubt on the accuracy of the alcohol level, in light of the incomplete nature of the test administered" to him. He asserts counsel should have objected "at this point" in Bleskacek's testimony.[2]

The State cites the statutory presumption of admissibility in chapter 321J, which states:

> Upon the trial of a civil or criminal action or proceeding arising out of acts alleged to have been committed by a person while operating a motor vehicle in violation of section 321J.2 or 321J.2A, evidence of the alcohol concentration or the presence of a controlled substance or other drugs in the person's body at the time of the act alleged as shown by a chemical analysis of the person's blood, breath, or urine is admissible. If it is established at trial that an analysis of a breath specimen was performed by a certified operator using a device intended to determine alcohol concentration and methods approved by the commissioner of public safety, no further foundation is necessary for introduction of the evidence.

Iowa Code § 321J.15.

The State contends even if a prosecutor does not strictly comply with this statute or related administrative regulations, the evidence is still admissible unless "it can be demonstrated that the test results are so unreliable as to preclude consideration." *See State v. Stratmeier*, 672 N.W.2d 817, 821 (Iowa 2003).

We do not believe section 321J.15 governs the question before us because the State was not offering "evidence of alcohol concentration" but rather

---

[2] By the time Bleskacek took the witness stand, the DataMaster printout had already been offered into evidence without objection through the testimony of Trooper Clark. Generally, we will not find admission of evidence is prejudicial "where substantially the same evidence is in the record without objection." *See Linge v. Iowa State Highway Comm'n*, 150 N.W.2d 642, 648 (Iowa 1967).

offering a mere confirmation that Hunt had consumed some amount of ethyl alcohol on the night in question.[3] Accordingly, whether Trooper Clark used approved methods for conducting the DataMaster test does not determine the need for further foundation under the statute. The question before us is a more generic one—Did the State demonstrate the reliability of Bleskacek's opinion regarding the DataMaster printout? *See State v. Hall*, 297 N.W.2d 80, 85 (Iowa 1980) ("Any weaknesses in the analysis could have been, and we presume they were, pointed out by cross-examination, with the ultimate weight of the evidence determined by the jury."), *modified*, *Ranes v. Adams Labs., Inc.*, 778 N.W.2d 677 (Iowa 2010).

We find the State presented sufficient foundation to admit Bleskacek's views on the DataMaster printout. The expert[4] testified the machine passed all of its initial checks.[5] He also dismissed concerns about common substances that could interfere with an accurate ethyl-alcohol reading. For instance, the phenomenon of a subject vomiting and raw alcohol being present in the mouth would be detected even if the subject did not provide a full breath sample. Bleskacek discussed different filters within the instrument that would look for

---

[3] We take no position on the question whether the State could have offered evidence of Hunt's blood alcohol concentration based on the incomplete test, but we note other jurisdictions have allowed evidence of alcohol concentration generated with deficient breath samples. *See State v. McIntyre*, 863 N.W.2d 471, 474 (Neb. 2015) (concluding evidence of a chemical breath test that records a deficient sample is admissible if the State lays sufficient foundation); *see also United States v. Brannon*, 146 F.3d 1194, 1196 (9th Cir. 1998); *State v. Mazzuca*, 979 P.2d 1226, 1228–29 (Idaho Ct. App. 1999); *People v. DeMarasse*, 647 N.E.2d 1353, 1354 (N.Y. 1995); *State v. Conrad*, 421 S.E.2d 41, 45 (W. Va. 1992).

[4] Hunt does not challenge the witness's qualifications.

[5] We find this situation is distinct from *State v. Wolfe*, 369 N.W.2d 458, 460 (Iowa Ct. App. 1985), where our court found an external reading of the defendant's blood alcohol concentration from an intoxilyzer machine was not admissible when the State did not show the machine was functioning properly.

"interfering substances" other than ethyl alcohol if an adequate sample is given; for example, if the subject being tested is a diabetic who has acetone on his breath or has "huffed" a compound containing difluoroethane, the machine would flag interference to the measure of ethyl alcohol. But neither of those examples applied to Hunt.

As the State argues, the DataMaster printout was relevant for two purposes: (1) to corroborate the trooper's determination that Hunt refused the breath test through non-cooperation and (2) to establish Hunt had some level of alcohol in his system. The lower, dotted line on the chart illustrated Trooper Clark's testimony that Hunt consistently failed to deliver a sufficient volume of breath to register a completed test. The upper, solid line revealed a measurement of more than zero alcohol in Hunt's system, which made it more likely he was driving under the influence.

We are not swayed by Hunt's assertion the jurors would have been confused by the unexplained 0-to-40 scale on the right side of the graph. Hunt ventures that his score of between 26 and 33 in breath alcohol could have wrongly led the jurors to believe he was over the per se blood alcohol limit of .08. The State counters that a reasonable juror "would have recognized 26.67 is not a blood alcohol number and that the prosecutor told the jury it was not providing the jury with a blood alcohol number." We find the State's position more logical. The probative value of the DataMaster printout was not substantially outweighed by the danger of unfair prejudice. *See Webster*, 865 N.W.2d at 242 (discussing two-part balancing test under rule 5.403). Hunt has not established his trial counsel had a duty to object at any point in Bleskacek's testimony. *See State v.*

12

*Smothers*, 590 N.W.2d 721, 724 (Iowa 1999) (holding counsel has no duty to advance a meritless objection).

But even if defense counsel had a duty to object to the unexplained scale of numbers on the right-hand side of the exhibit, Hunt cannot show that he was prejudiced by counsel's omission. Prejudice exists if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A 'reasonable probability' means a 'substantial,' not 'just conceivable,' likelihood of a different result." *See State v. Madsen*, 813 N.W.2d 714, 727 (Iowa 2012) (citation omitted) (explaining counsel's error must "undermine our confidence in the verdict" (citation omitted))

The jury was asked to decide if Hunt was operating while under the influence of an alcoholic beverage, not whether he was over the per se legal limit. The jury was instructed that a person could be considered under the influence of liquor when his reasoning or mental ability was affected; his judgment was impaired; his emotions were visibly excited; or he had, to any extent, lost control of bodily actions or motions. *See In re S.C.S.*, 454 N.W.2d 810, 814 (Iowa 1990). The State presented the jury with abundant evidence that Hunt was under the influence. *See State v. Benson*, 506 N.W.2d 475, 477 (Iowa Ct. App. 1993) (finding defendant was not prejudiced by erroneously admitted evidence where record contained strong indications of intoxication). Three motorists independently called authorities to report Hunt's erratic driving. The trooper confirmed Hunt was speeding and fishtailing through a curve. Hunt drove on the right shoulder of the highway for one mile after the trooper signaled him to

stop. Hunt did not initially react when the officer knocked and shone his flashlight into the truck. Hunt had serious difficulty in controlling his bodily movements, using the patrol car for balance. Hunt smelled of alcohol, and his eyes were bloodshot and watery. He had trouble retrieving his license and proof of insurance. Hunt's mental impairment was evident when his answers did not respond to the trooper's questions. Hunt also failed the one-leg stand and HGN tests. *See S.C.S.*, 454 N.W.2d at 814 (finding similar "classic signs of intoxication" supported under-the-influence finding). Moreover, Hunt does not contend the State could not offer evidence of Hunt's test refusal. *See* Iowa Code § 321J.16; *see also State v. Massick*, 511 N.W.2d 384, 387 (Iowa 1994) (allowing jury to consider test refusal as evidence in trial for operating under the influence). Given the overwhelming evidence of his impairment, Hunt cannot show that but for the admission of the DataMaster printout there was a reasonable likelihood of a different outcome. *See Madsen*, 813 N.W.2d at 729 (finding counsel's deficient performance did not undermine confidence in outcome given overwhelming evidence of guilt).

## B. State's Closing Argument

As his second claim of ineffective assistance, Hunt contends trial counsel was remiss in not objecting during the prosecutor's closing argument. First, Hunt contends the prosecutor misstated the record in two respects: (1) that the incomplete DataMaster test indicated the presence of alcohol in his system and (2) that he denied drinking.

At issue are the following passages from the State's summation. First, the prosecutor discussed the DataMaster exhibit.

> [T]he final thing that shows that the defendant was under the influence is the presence of alcohol in that DataMaster test, and that's what the defendant can't get around. The presence of alcohol confirmed what Trooper Clark was seeing in all of the interactions that he had with him. It confirmed that the defendant had been drinking alcohol. Now, we don't have a number we are going to give you because the defendant messed with that breath test.

Then the prosecutor highlighted Hunt's representations about his consumption of alcohol that night.

> The defendant denies drinking. And one of those instructions tells you that you can believe all, part, or none of a witness's testimony, and that includes the defendant.
> It also tells you that you can consider the interest of the witness in the outcome of this trial. If the defendant admits to you that he had been drinking, even a little bit, it makes it more likely that you will convict him of this charge. So he has to hedge his bet.
> Although the officer directly asked him if he had been drinking, he didn't answer the question. He now says he had a chia drink that may have contained alcohol. He's not really sure. There's no evidence that the chia drink actually exists. The officer didn't find any open containers of alcohol in the car. There is no evidence that that would have any effect on his ability to perform any of these tests.

When viewed in context, the prosecutor's arguments related back to specific evidence in the record, contained legitimate inferences from that evidence, and were delivered in a professional manner. *See State v. Carey*, 709 N.W.2d 547, 556–57 (Iowa 2006). The State's references to the DataMaster test showing alcohol in Hunt's breath juxtaposed with Hunt's benign admission to consuming a "health drink" that may have contained alcohol were fair points derived from the record and did not call for objection from defense counsel. The prosecutor punched hard but not below the belt. *See Berger v. United States*, 295 U.S. 78, 88 (1935) (distinguishing between a prosecutor leveling "hard blows" from "foul ones").

Hunt also contends the prosecutor committed misconduct by "attacking the credibility of the defendant and vouching for the credibility of Deputy Thomas Clark." Hunt cites the following passage as impermissible vouching:

> [The beyond-a-reasonable-doubt instruction] tells you that you don't need to hunt for doubt. If you believe that the officer is credible and that what he testified to is consistent with the video, and what the video shows is consistent with what the law shows you, you don't need to hunt for explanations in this case.

Hunt further argues the prosecutor violated the prohibitions in *State v. Graves*, 668 N.W.2d 860, 876 (Iowa 2003), by making the following assertions about his credibility:

> The defendant simply isn't credible. You think about where he explained he was headed. If you are coming from Minneapolis and headed to Kansas, that I-35 sign tells you Kansas City, go south. The defendant gets off and goes westbound. It doesn't make sense, if he wants to go somewhere warmer, so he heads from Iowa to Nebraska? That's the direction he was headed. And looking for a place to rest his 30-foot trailer also doesn't make sense, because if you are going further south there is almost assuredly going to be the same opportunities for any type of rest stop, any type of campground. Southern Iowa, western Iowa, northern Missouri, they are all going to have the same opportunities for the defendant to rest his trailer. He isn't making sense about what happened. He is not being honest with you about his actions on that day.

Neither argument was improper. The prosecutor did not personally vouch for the trooper's veracity but rather left that determination up to the jurors with guidance from the jury instructions. Unlike the situation in *Graves*, the prosecutor here did not distort the burden of proof. *See* 668 N.W.2d at 880. Likewise, the prosecutor did not use the inflammatory term "liar" to diminish Hunt before the jurors. *See id.* at 876. Instead, the prosecutor tied her argument that he was not credible to what she viewed as inconsistent testimony about his

destination.  Defense counsel had no duty to object.  *See Carey*, 709 N.W.2d at 558–59 (distinguishing *Graves* and rejecting claim of misconduct though prosecutor suggested defendant "had been less than truthful regarding his version of events").

To recap, Hunt has not shown his trial counsel rendered ineffective assistance in regard to either the incomplete DataMaster test or the State's closing argument.  Accordingly, we affirm his conviction.

**AFFIRMED.**

Vogel, P.J., concurs; Mullins, J., concurs specially.

**MULLINS, J.** (concurring specially)

I would find trial counsel breached an essential duty in failing to object to the admissibility of the DataMaster printout, which contained a scale of numbers that were not explained and would likely lead to confusion and speculation by reasonable jurors. However, I agree with the majority that even assuming counsel should have objected, the evidence of Hunt's guilt was overwhelming and Hunt did not demonstrate there was a reasonable likelihood of a different outcome if the printout had not been admitted into evidence. For those reasons, I concur in the result but write separately.