**David E. CLAWSON, Petitioner Below, Appellant,**

v.

**STATE of Delaware, Respondent Below, Appellee.**

No. 203,2004.

Supreme Court of Delaware.

Submitted: Nov. 17, 2004.

Decided: Jan. 27, 2005.

---

17.  628 A.2d 77 (Del.1993).

18.  *Id.*

19.  *Id.*

20.  *Id.*

Eric G. Mooney, Esq., Georgetown, Delaware, attorney for Appellant.

Kim Ayvazian, Esq., Department of Justice, Georgetown, Delaware, for Appellee.

Before STEELE, Chief Justice, JACOBS and RIDGELY, Justices.

RIDGELY, Justice.

David E. Clawson appeals from his convictions for driving under the influence

under 21 *Del. C.* §§ 4177(a)(1) and (a)(5).[1] Clawson challenges the admission of the intoxilyzer test result into evidence and advances a bright line rule that the operator of the intoxilyzer machine must complete the twenty minute observation period required by the manufacturer before inserting the intoxilyzer card into the machine.

We have concluded that the test result was inadmissible in this case because there was insufficient evidence in the record to meet the foundation requirement that Clawson was observed for an uninterrupted twenty minute period prior to the testing of his blood alcohol content. Testing commenced upon the officer inserting the intoxilyzer card into the machine. Accordingly, we reverse Clawson's conviction under 21 *Del. C.* § 4177(a)(5). We also reverse Clawson's conviction under 21 *Del. C.* § 4177(a)(1) because the admission of the test result was not harmless beyond a reasonable doubt as to the companion charge of driving under the influence. This case is therefore remanded for a new trial.

## I.

On the night of his arrest, Clawson was found buckled in the driver's seat of a parked vehicle on the shoulder of Delaware Route 26 by the Delaware State Police. The lights of the vehicle were on and the keys were in the ignition. Corporal Tom Smith of the Delaware State Police determined that Clawson looked intoxicated based on his observations of Clawson's flush face, bloodshot and glassy eyes, and lethargic motions.

Delaware State Police Trooper Patrick Wenk arrived shortly thereafter and was briefed by Corporal Smith. Upon approaching the driver side of Clawson's vehicle, Trooper Wenk immediately smelled an odor of alcohol emitting from Clawson's breath and person. He also made similar observations to those of Corporal Smith regarding Clawson's intoxicated appearance. Trooper Wenk testified that Clawson admitted that he had consumed six or seven Margaritas that evening but denied that he was the driver of the vehicle.[2]

Trooper Wenk administered field sobriety tests which Clawson failed. Trooper Wenk then took Clawson into custody and transported him to Troop 4 for an intoxilyzer test. At Troop 4, the Intoxilyzer 5000 was used to test Clawson's blood alcohol content. The machine measured Clawson's blood alcohol content at .159.

At the trial, Trooper Wenk testified about the mandatory twenty minute observation period. He testified that he began the twenty minute observation of Clawson

---

1. DEL. CODE ANN. tit. 21, § 4177(a)(1) and (a)(5) (2004). These sections state:
   (a) No person shall drive a vehicle:
   (1) When the person is under the influence of alcohol ... or
   (5) When the person's alcohol concentration is, within 4 hours after the time of driving .08 or more. Notwithstanding any other provision of the law to the contrary, a person is guilty under this subsection, without regard to the person's alcohol concentration at the time of driving, if the person's alcohol concentration is, within 4 hours after the time of driving .08 or more and that alcohol concentration is the result of an amount of alcohol present in, or consumed by the person when that person was driving.

2. Clawson later explained at trial that the vehicle was pulled over onto the shoulder of the road after he instructed the actual driver to do so. Clawson added that the driver left and he moved into the driver's seat to sleep and for protection. He explained that he began drinking around 4:15 p.m. (which was more than 7 hours before the test) and that he consumed a total of five to seven Margaritas during the course of that afternoon and evening.

at 11:32 p.m. At this point in the trial, defense counsel requested voir dire of Trooper Wenk outside the presence of the jury. He told the trial judge that there was only a nineteen minute observation period because the intoxilyzer card indicated that the test began at 11:51 p.m. The trial judge, however, allowed the State to continue to examine Trooper Wenk and permitted Clawson to raise an objection on cross before the intoxilyzer test result was introduced.

Continuing with his direct examination, Trooper Wenk then testified that the actual time Clawson blew into the machine was 11:54 p.m., twenty-two minutes after the observation period began. Trooper Wenk also testified that he inserted the intoxilyzer card into the machine and completed three internal calibration tests of the machine at 11:51 p.m. Trooper Wenk then explained:

> And what most likely happened, looking at my notes now, when I saw it was not quite the time, if you recall, I mentioned the twenty minute period, at [11:32 p.m.] I guess is 19 [minutes] from [11:51 p.m.], so I waited several minutes thereafter to give myself a definite 20–minute observation period. Before he actually blew into the machine, I waited an additional three minutes. It looks like at [11:54 p.m.], three minutes later putting me at 22 minutes, he actually blew into the machine.

On cross-examination, Trooper Wenk reiterated that he started the observation period at 11:32 p.m., and that he inserted the intoxilyzer card into the machine and completed three internal calibration tests of the machine at 11:51 p.m. However, Trooper Wenk changed his prior testimony given on direct examination that Clawson blew into the machine at 11:54 p.m. Trooper Wenk said that the machine's reading merely came out at 11:54 p.m., and that he was uncertain when Clawson actually blew into the machine.

The trial judge called for a sidebar, at which time defense counsel presented three cases to support his objection to the admission of the test result.[3] The trial judge then ruled that the twenty minute observation period was not a foundation issue to be raised at trial but was required to be raised in either a motion to suppress or a motion in limine. He found that Clawson's objection came too late because it was not raised in a motion to suppress or by a motion in limine. He alternatively chose not to follow the precedents of the Superior Court and Court of Common Pleas that were advocated by Clawson and thereby created a split of authority within the Superior Court on the requirements for admission of an intoxilyzer test into evidence.

The jury returned a guilty verdict on the charge of driving a vehicle while under the influence of alcohol under 21 *Del. C.* §§ 4177(a)(1) and (a)(5). The trial judge fined Clawson $2,000 and sentenced him to five years imprisonment at Level V incarceration followed by six months of Level III supervision.

---

3. The cases submitted by Clawson to the trial judge were as follows: *Holland v. Voshell,* C.A. No. 86A–AP2 (Del.Super.Ct. Sept. 3, 1986) (refusing even a *de minimus* departure from the manufacturer's requirement of a twenty minute observation period prior to beginning the test); *State v. Subrick,* Cr.A. No. 93–12–0496 (Del.Com.Pl. Feb. 8, 1994) (holding that the intoxilyzer test begins upon the insertion of the intoxilyzer card into the machine and that the State failed to establish by a preponderance of the evidence that it complied with the twenty minute observation period); *State v. Morales,* Cr.A. No. S95–06–0396–0399 (Del.Super.Ct. Oct. 25, 1995) (embracing the holding that insertion of the intoxilyzer card begins the test).

## II.

This case presents us with two issues. The first is whether compliance with the twenty minute observation period is an issue that must be raised before trial either in a motion to suppress or a motion in limine, or is an evidentiary foundation issue which cannot be waived by a failure to file a pretrial motion. The second is whether the State must establish an uninterrupted twenty minute observation period before beginning the intoxilyzer test, as required by the machine's manufacturer, in order to provide an adequate evidentiary foundation for the admission of the test result into evidence.

## A.

Clawson objected at trial to admitting the intoxilyzer test result on the ground that the State established only a nineteen minute observation period, which deviated from the manufacturer's mandated twenty minute observation period. The trial judge admitted the intoxilyzer test result over Clawson's objection, first finding Clawson's objection untimely, and then, alternatively rejecting the objection on the merits. In reaching his first conclusion, the trial judge reasoned that Clawson was aware of the intoxilyzer card through discovery, had copies of the three cases supporting his position, and in fact prepared an argument advancing a bright line rule

regarding the twenty minute observation period prior to trial. The State argued and the trial judge agreed that Clawson was attempting to "ambush" the State by filing an untimely motion to suppress.

■ This Court has not previously addressed whether the twenty minute observation period for the admission of the intoxilyzer test result is an evidentiary foundation question or an issue that must be raised before trial. Because this is an issue of first impression, we look to analogous cases issued by this Court and elsewhere for guidance. This Court has held that the admissibility of intoxilyzer test results center on the State providing an adequate evidentiary foundation for the test result's admission.[4] We also find persuasive *People v. DeMarasse*,[5] a decision issued by the New York Court of Appeals. In *DeMarasse*, defense counsel objected to the admission of a breath test result from an Intoxilyzer 5000.[6] In reinstating the defendant's conviction for driving with a blood alcohol content greater than .10, the New York Court of Appeals focused on what constituted a proper foundation for the admissibility of the breath score.[7] Consistent with these authorities, we hold that objections concerning the twenty minute observation period are evidentiary foundation issues which may be raised either by a pretrial motion or by an objection at trial.[8] We therefore disagree with

4. *See McConnell v. State*, No. 293, 1993, 1994 WL 43751, at *1, 1994 Del. LEXIS 63, at *3 (Del. Feb. 3, 1994) (focusing on whether there was an adequate evidentiary foundation establishing that the intoxilyzer test result is accurate). *Cf. Best v. State*, 328 A.2d 141 (Del.1974) (concluding that a foundational prerequisite to introduce the result of an intoxilyzer test into evidence is for the State Chemist to certify that the machine is working accurately before and after testing the breath of the defendant).

5. 85 N.Y.2d 842, 623 N.Y.S.2d 845, 647 N.E.2d 1353 (1995).

6. *Id.* at 845, 647 N.E.2d at 1354.

7. *Id.*

8. *See, e.g., Dawson v. State*, 581 A.2d 1078, 1085–88 (Del.1990), *rev'd on other grounds*, 503 U.S. 159, 112 S.Ct. 1093, 117 L.Ed.2d 309 (1992), *enforced*, 608 A.2d 1201, 1206 n. 3 (Del.1992) (concluding that the trial judge did not abuse his direction in deciding not to rule on the defendant's motion in limine to ex-

the trial judge's conclusion that the defense waived any objection to admission of the test results. Clawson made a timely objection to the admissibility of the intoxilyzer test result at trial. Accordingly, we review a trial court's ruling admitting the evidence of an intoxilyzer test result over a defendant's objection under an abuse of discretion standard.[9]

**B.**

Clawson requests that this Court embrace the bright line rule adopted in other Delaware cases but not by the trial court here. In *Holland,* the Superior Court first established a bright line rule for the twenty minute observation period in holding that a "failure to demonstrate that there was a period of twenty minutes when [a] defendant [is] observed by the officer is a failure by the officer to follow the procedure required in the manufacturer's instructions."[10] In *Subrick*, the Court of Common Pleas held that the twenty minute observation period established in *Holland* must be completed prior to inserting the intoxilyzer card, which begins testing.[11] The Court of Common Pleas was concerned that "once the testing procedure begins the officer is focused on the machine rather than on the defendant who is before him" if the officer inserts the intoxilyzer card before the twenty minute observation period is completed.[12] Finally, in *Morales*, the Superior Court adopted the rationale of *Subrick* and held that the machine's operator is to wait twenty minutes prior to starting the test by inserting the intoxilyzer card into the machine.[13]

▪ We find the rationale of these cases and the benefit of the clear guidance they give to be persuasive. We hold that in order for the result of the intoxilyzer test to be admitted, the State must lay an adequate evidentiary foundation showing that there was an uninterrupted twenty minute observation of the defendant prior to testing. We further hold that testing commences when the officer inserts the intoxilyzer card into the machine.

This is not a burdensome requirement given the purpose behind the twenty minute observation period and the significant consequence of admitting a test result into evidence. When the Intoxilyzer 5000 was determined to be scientifically acceptable in determining blood alcohol content, part of the process for making the test results reliable was compliance with the manufacturer's protocol for the twenty minute observation period. The purpose of this requirement is to eliminate the effect of residual alcohol or other contaminates within the mouth cavity that could affect the reliability of the test's results.

▪ We now apply our holding to the record before us. The evidence in the present record shows that Trooper Wenk started the observation period at 11:32 p.m., and that he inserted the intoxilyzer

clude evidence relating to the Aryan Brotherhood until the penalty phase of the defendant's initial proceeding); *Hatcher v. State*, 337 A.2d 30, 32 (Del.1975) (providing that the voluntary nature of a statement under Del. Code Ann. tit. 11, § 3507 (2004) may be determined at trial).

9. *Goodwin v. State*, No. 111, 1991, 1992 WL 53432, at *1, 1992 Del. LEXIS 90, at *3 (Del. Feb. 27, 1992) (citing *Gray v. State*, 441 A.2d 209, 222 (Del.1981)).

10. *Holland v. Voshell*, C.A. No. 86A–AP2, slip op. at 1 (Del.Super.Ct. Sept. 3, 1986).

11. *State v. Subrick*, Cr.A. No. 93–12–0496, slip op. at 3 (Del.Com.Pl. Feb. 8, 1994).

12. *Id.*

13. *State v. Morales*, Cr.A. No. S95–06–0396–0399, slip op. at 1–2 (Del.Super.Ct. Oct. 25, 1995).

card into the machine at 11:51 p.m. The record does not show that Trooper Wenk or any other police officer actually observed Clawson for an uninterrupted twenty minute period before inserting the intoxilyzer card into the machine. In the absence of this evidence, we must conclude that admitting the intoxilyzer test result constituted an abuse of discretion.

### III.

Because the intoxilyzer test result was inadmissible in this case, Clawson's conviction under 21 *Del. C.* § 4177(a)(5) must be reversed. Although Clawson's separate conviction under 21 *Del. C.* § 4177(a)(1) did not require a test result, the admission of a test result that was not in compliance with the manufacturer's requirements jeopardized the fairness of his trial on that separate charge. Accordingly, we **REVERSE** Clawson's convictions under 21 *Del. C.* §§ 4177(a)(1) and (a)(5), and we **REMAND** this matter for a new trial.