**IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE**
**IN AND FOR NEW CASTLE COUNTY**

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| v. | ) | Case No. 1511000018 |
| | ) | |
| NAILAH GRINNAGE, | ) | |
| | ) | |
| Defendant | ) | |

Submitted:     March 9, 2017
Decided:        March 16, 2017

Erik Towne, Esquire
Deputy Attorney General
820 N. French Street, 7th Floor
Wilmington, DE 19801
*Attorney for the State of Delaware*

Gregory Johnson, Esquire
1523 Delaware Avenue, 1st Floor
Wilmington, DE 19806
*Attorney for Defendant*

## MEMORANDUM OPINION AND ORDER
## ON DEFENDANT'S MOTION TO SUPPRESS

The defendant, Nailah Grinnage (hereinafter the "Defendant"), brings this motion to suppress evidence in connection with a Driving Under the Influence ("DUI") investigation. The Defendant raised three grounds for suppression: the arresting officer lacked probable cause; the officer used two different timepieces to establish the twenty-minute observation period for the intoxilyzer test; and the presence of retainer devices in the Defendant's mouth invalidated the intoxilyzer test. On January 31, 2017, a hearing was convened on the matter, with the balance of the testimony heard on March 9, 2017. Following the hearing, the Court reserved decision. This is the Final Decision of the Court on the Defendant's Motion to Suppress.

## FACTS AND PROCEDURAL HISTORY

At the hearing on January 31, 2017, and at the continuation of the hearing on March 9, 2017, the Court heard testimony from three witnesses: Cynthia McCarthy, a forensic chemist with the Delaware State Police; Master Corporal Anita McCloskey (hereinafter "Trooper McCloskey"), a police officer with the Delaware State Police, Troop 2; and the Defendant. Based upon the testimony of the witnesses, the Court finds the relevant facts as follows.

On October 31, 2016, at approximately 11:55 p.m., Trooper McCloskey was dispatched to the scene of a minor accident. The accident occurred in the parking lot outside of the On the Rocks bar on Old Baltimore Pike in Newark, when the Defendant allegedly struck the side of another vehicle while pulling out of a parking spot. When Trooper McCloskey arrived, both of the vehicles were in parking spots, and the Defendant was engaged in a loud telephone conversation.

Upon approaching the Defendant, Trooper McCloskey asked what had happened. The Defendant admitted she was at the On the Rocks bar and had struck the other vehicle while pulling out of the parking spot. Trooper McCloskey detected a faint to moderate odor of alcohol and glassy eyes, while also noticing the Defendant had difficulty producing her license. When asked whether she had anything to drink, the Defendant reportedly stated she had consumed an Absolut and vodka, which – based upon the Defendant's gestures – Trooper McCloskey estimated to be approximately sixteen ounces. Throughout the encounter, the Defendant was combative, agitated, and loud. The Defendant accused the driver of the other vehicle of committing fraud and accused the On the Rocks bar of setting the Defendant up. During this time, the Defendant also stated she, the Defendant, was drunk.

Trooper McCloskey proceeded to conduct the alphabet test, asking the Defendant to recite the alphabet from E to V. The Defendant completed this test with only minor slurring. Moving to the counting test, Trooper McCloskey instructed the Defendant to count backward from 47 to 30. The Defendant counted from 47 to 41, paused, counted 40 and 39, repeated some numbers, went to 26, and then mumbled down to 22.

Next, Trooper McCloskey conducted the Walk and Turn test. According to Trooper McCloskey, the Defendant demonstrated two of a possible eight clues. On the One Leg Stand test, the Defendant demonstrated three of four possible clues. While describing the nature of the test and the clues, Trooper McCloskey stated the One Leg Stand test consists of three distinct ten-second periods, with a possibility of four clues per period; accordingly, Trooper McCloskey counted the same clue three times.

Following the field sobriety tests,[1] Trooper McCloskey placed the Defendant under arrest and transported her to Troop 2. Trooper McCloskey began the observation period at 12:44 a.m. on November 1, 2017, with the time provided by Trooper McCloskey's wristwatch. The observation period ended at 1:12 a.m., with the time provided by the intoxilyzer machine. Trooper McCloskey admitted she did not know whether her watch was calibrated. Prior to taking the breath test, the Defendant stated she had retainer devices in her mouth.[2] The Defendant was ultimately charged with driving under the influence.

---

[1] The State conceded the results of the PBT were inadmissible. There is no indication an HGN was performed.

[2] While the State disputes this information was ever conveyed to Trooper McCloskey, the Court will accept the Defendant's assertion for the purposes of this Motion. On the MVR played for the Court, the Defendant can be heard telling Trooper McCloskey "I wear retainers." The State maintains the record is ambiguous as to whether the Defendant was wearing the retainers at the time of the incident.

## PARTIES' CONTENTIONS

The Defendant raises three grounds for suppression. First, the Defendant argues all evidence following the arrest must be suppressed for lack of probable cause. Second, the Defendant argues the State failed to prove the requisite twenty-minute observation period before administering the intoxilyzer test. Specifically, the Defendant argues the use of two timepieces, without confirming the synchronicity of the two and without verifying the calibration of the wristwatch, renders it impossible to determine whether the observation period lasted for twenty minutes. Third and finally, the Defendant argues the presence of retainer devices invalidates the intoxilyzer test. The Defendant points to both NHTSA guidelines and departmental policy of asking about and having individuals remove dentures prior to administering an intoxilyzer test as evidence of the need to remove all such dental appliances.

The State argues probable cause existed to arrest the Defendant. Concerning the use of two timepieces, the State argues the observation period was twenty-eight minutes, rather than twenty minutes; accordingly, the State argues it has proven the requisite observation period. Lastly, the State presented evidence and testimony suggesting there is no realistic likelihood of dental appliances contributing to incorrect results on an intoxilyzer test.

## DISCUSSION

On a Motion to Suppress, the State bears the burden of proving the legality of the underlying stop and subsequent arrest by a preponderance of the evidence, while also proving the arresting officer complied with the applicable standards for administering the intoxilyzer test.[3] The standard for probable cause is well established:

---

[3] *State v. Anderson*, 2010 WL 4056130 at *3 (Del. Super. Oct. 14, 2010).

4

To establish probable cause for a DUI offense, an officer must possess "information which would warrant a reasonable [person] in believing that [such] a crime ha[s] been committed." Therefore, an officer must "present facts which suggest, when those facts are viewed under the totality of the circumstances, that there is a fair probability" that the defendant has committed a DUI offense.[4]

## I.     Probable Cause

The Court had previously advised the parties it had found probable cause; therefore, the Court will not go into a lengthy analysis here. However, for the purposes of the record, the Court found the following indicators of impairment to establish probable cause: a minor traffic accident in which the Defendant struck a stationary vehicle; a faint odor of alcohol; admission to coming from a bar; admission to drinking; admission to being drunk; glassy eyes; inappropriate reactions and comments; difficulty producing documents; combative and agitated demeanor; and balance issues.

While the Court finds probable cause existed to support an arrest, this conclusion is not based upon any scientific evidence resulting from the field sobriety tests. The Court finds Trooper McCloskey failed to administer the tests in accordance with NHTSA standards and failed to understand – and thus communicate to the Court – the principles and bases for assigning scientific, standardized weight to the results. Therefore, the Court will suppress the scientific portions of the field sobriety tests.[5] Trooper McCloskey is permitted to testify to her observations of the Defendant only; Trooper McCloskey cannot testify on clues, probabilities, or other scientific aspects of the field sobriety tests.

---

[4] *Slaney v. State*, 2016 WL 5946485, at *6 (Del. Super. Oct. 7, 2016) (citations omitted).
[5] *See State v. Iyer*, 2011 WL 976480, at *10 (Del. Super. Feb. 23, 2011) ("This Court has previously held that the Court of Common Pleas is free to disregard field tests when assessing whether probable cause exists if such tests were not conducted in accordance with NHTSA guidelines.")

## II. The Use of Two Timepieces

In *Clawson v. State*,[6] the Delaware Supreme Court established a bright line rule requiring a twenty-minute observation period to precede administration of an intoxilyzer test.[7] This requirement is foundational and precludes admission of the intoxilyzer when the State fails to establish the requisite observation period.[8] In *State v. Barclift*,[9] this Court suppressed an intoxilyzer test when the officer used two different clocks to establish an observation period of precisely twenty minutes.[10] The Court summarized the issue as follows:

> Although the officer testified that he commenced a twenty minute observation of the defendant at 6:58 P.M. and began the intoxilyzer test at 7:18 P.M., which is barely twenty minutes, he used different clocks to determine the time. These clocks were not coordinated and synchronized. Given this fact, there is no way to determine whether the defendant was observed for a full twenty minutes prior to the commencement of the intoxilyzer test and the State has failed to meet its burden of proving that the twenty minute observation period has been satisfied.[11]

The Defendant argued this creates a second bright line rule mandating the use of a single timepiece; the Court notes the above language regarding coordination and synchronization would allow the use of multiple timepieces if they were established to be in sync with each other. Conversely, the State argues *Barclift* is limited to the circumstances where the twenty-minute period has only barely been met. As the period in the matter *sub judice* was twenty-eight minutes, and Trooper McCloskey testified the period was at least twenty minutes, the State urges the Court to find the period has been established.

Central to the argument against the use of multiple timepieces is the prospect of inaccuracy. With a single clock, it does not matter whether the clock accurately portrays the

---

[6] 867 A.2d 187 (Del. 2005).
[7] *Id.* at 192.
[8] *Id.*
[9] 2011 WL 7563024 (Del. Com. Pl. Aug. 19, 2011).
[10] *Id.* at *2.
[11] *Id.*

6

time, so long as the clock is not fast or slow. While the Court did not hear testimony as to the nature of the intoxilyzer machine's clock, the Court will presume, for the sake of argument only, it is calibrated, verified, and reliable. Whereas an intoxilyzer machine is a piece of sensitive machinery with a designated purpose, subjected to all manner of testing and calibration, the same cannot be said of an ordinary wristwatch. Furthermore, the Court did not hear testimony on any specifics of the watch – whether it ran on batteries, was self-winding, had the ability to update the time automatically, or even how old it was. The Court notes some individuals deliberately set their timepieces ahead a few minutes. There was no testimony on this issue; therefore, the Court lacks any means whatsoever to determine whether the watch was fast, slow, set incorrectly, or even functional.

There is a further complication, one that is entirely reliant on the unique circumstances of the night in question. Trooper McCloskey arrived at the scene late at night on October 31, 2015, and performed the intoxilyzer test in the early hours of November 1, 2015. The Court takes judicial notice daylight savings time ended at 2:00 a.m. on November 1, 2015.[12] While the mere fact of daylight savings time ending does not *per se* render timing suspect, it does create additional ambiguity. Individuals routinely change their clocks both before and after the time officially changes; while in the process of changing the hour, there is greater room for error in misadjusting the minutes.

Under the facts introduced at the hearings, the Court only knows two timepieces were used. The Court does not know if they were checked against each other in any way, if the wristwatch was calibrated, or if it was even working properly that day. Even assuming the time on the intoxilyzer was accurate, there is no indication as to the accuracy of the wristwatch.

---

[12] While no Delaware case appears to have addressed judicial notice of daylight savings time, it is addressed in Wharton's Criminal Evidence. *See* 2 Wharton's Criminal Evidence § 5:14 (15th ed.).

7

There is no rule requiring a watch to be accurate within a certain range. The fact there is an eight-minute grace period is meaningless if the watch was off by ten minutes.

The Court is not establishing a bright line rule requiring the use of a single timepiece. There are many conceivable circumstances where the Court would be satisfied with an observation period dictated by different clocks. However, based upon the lack of testimony and the peculiar fact of daylight savings time having ended around the time the test was performed, the Court cannot say the State has met its burden. Accordingly, the results of the intoxilyzer test must be suppressed.

### III.    The Presence of Retainer Devices During the Intoxilyzer Test

Because the Court has suppressed the intoxilyzer test on other grounds, and because the State conceded the PBT, the Court does not reach the question of what effect, if any, a retainer device may have on the reliability of the intoxilyzer test.

### CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** this 16th day of March, 2017, that Defendant's Motion to Suppress is **GRANTED** with respect to the results of the intoxilyzer test. The Clerk is directed to schedule a trial in this matter.

The Honorable Carl C. Danberg
Judge

cc:    Diane Healy, Judicial Case Management Supervisor