IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| WILLIE DAVIS, | § | |
| | § | |
| Defendant Below, | § | No. 540, 2017 |
| Appellant, | § | |
| | § | Court Below—Superior Court |
| v. | § | of the State of Delaware |
| | § | |
| STATE OF DELAWARE, | § | |
| | § | Cr. ID. S1704010756 |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: December 12, 2018
Decided: January 23, 2019

Before **STRINE**, Chief Justice; **VAUGHN** and **TRAYNOR**, Justices.

**O R D E R**

This 23rd day of January 2019, after careful consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1) Willie Davis was driving southbound on Sussex Highway in the early hours of April 15, 2017 when Seaford Police Department officer Michael Short observed Davis repeatedly crossing over the center line. Short pulled Davis over and arrested him for driving under the influence and making an improper lane change after he failed several field sobriety tests and refused others.

(2) Short secured a search warrant to obtain a blood sample from Davis and drove him to Nanticoke Memorial Hospital. At Nanticoke, phlebotomist Gina Dickenson drew Davis's blood using a collection kit provided by Short. The kit

included, among other things, instructions, a needle, and a vacuum tube to collect the blood. To protect the blood sample from contamination, the phlebotomist should insert the needle into the patient before attaching the vacuum tube to the needle.[1]

(3)     At trial, Dickenson testified that she withdrew Davis's blood "in accordance with the kit's instructions," *i.e.*, "using normal procedures."[2] According to Dickenson, she (i) applied a tourniquet, (ii) looked for the best vein from which to draw blood, (iii) wiped down the area with iodine, (iv) dried the area with a gauze pad, (v) inserted the needle, (vi) drew Davis's blood, (vii) removed the tourniquet, and (viii) applied a bandage.[3] Davis's counsel's cross-examination of Dickenson was exceedingly brief and did not cover the sequence in which Dickenson inserted the needle and attached the vacuum tube.[4] After the cross-examination, Dickenson was excused and the trial was recessed until the following day.

---

[1] *See State v. Fountain*, 2016 WL 4542741 at *9 (Del. Super. Aug. 30, 2016) ("[P]uncturing the tube before the needle is in the arm will not only degrade the vacuum prematurely but also compromise the tube's sterility. This type of exposure could allow in contaminants that cause fermentation which could artificially inflate BAC results.").

[2] App. to Op. Br. A7–8 ("A__" hereafter); A18.

[3] A8.

[4] A14–15. The entirety of the cross-examination, occupying little more than one page of the trial transcript, reads as follows (continued on next page):

Q: Ms. Dickenson, do you recall the blood draw on April 15th of 2019 with Mr. Davis at all?
A: I remember being called to the ER and what it was for and I came down and I drew his blood.
Q: That's all you remember about the incident – about the blood draw?
A: Pretty much.
Q: All right.
A: Usually, unless they do something off the wall and crazy, you don't remember a whole lot.

2

(4) When the trial was reconvened on the following day, the State called Delaware State Police Crime Laboratory analyst Whitney Smith, who testified that she examined Davis's blood sample and concluded that it was properly drawn and mixed and was neither tainted nor contaminated by other means.[5] Smith conducted a headspace gas chromatograph of the blood sample and issued a Certificate of Analysis and a Blood Alcohol Report ("BAC Certificate and Report") indicating that Davis's blood alcohol content at the time of his blood draw was 0.19% w/v.[6]

(5) When the State attempted to admit Smith's BAC Certificate and Report into evidence, Davis objected, citing *State v. Fountain*. Davis claimed that the State had failed to lay a proper foundation for Smith's reports because Dickenson had not explicitly testified that she inserted the needle in his arm before she attached the vacuum tube.[7] The Superior Court then held a brief recess to allow the State to read *Fountain* and to contact Dickenson to recall her as a witness.[8]

---

Q: Okay. You indicated that you put information into the system. What were you talking about when you said that?
A: After the collection is done and after the troopers have all their information, I have the copy of the search warrant and the copy of the admission papers from the hospital. I have to go to into our system and charge him – charge them a fee for the collection itself.
Q: So it's, like, an administrative thing –
A: Yes.
Q: – as far as payment?
A: Yes.
[Q]: Okay. I don't have anything further. Thank you, [y]our Honor.

[5] A28.
[6] A49.
[7] A33, A35, A46–47.
[8] A39.

3

(6)     Immediately after reconvening, however, the court decided to overrule Davis's objection and admit the BAC Certificate and Report without hearing further argument or testimony.[9]

(7)     Davis argues that Superior Court should not have admitted the BAC Certificate and Report because State failed to properly establish a foundation under *Fountain*.  As Davis reads it, *Fountain* requires a phlebotomist to specifically testify that they inserted "the needle in the person's arm prior to puncturing the stopper on the [vacuum] tube."[10]  We disagree.

(8)     In *Clawson v. State*,[11] we discussed the requirements for admitting BAC evidence gathered by machine. In *Clawson*, we stated that "the admissibility of intoxilyzer test results center on the State providing an adequate evidentiary foundation for the test result's admission."[12]  We held that a "bright line" rule applied to compliance with manufacturer instructions when administering such tests, noting that such a standard gives the "benefit of [] clear guidance."[13]

(9)     In *Fountain*, the Superior Court ultimately suppressed the State's BAC evidence because the *Fountain* phlebotomist testified that, in contravention of proper procedure, she put the vacuum container on the needle before the needle was in the

---

[9] A39–40.
[10] Op. Br. 10.
[11] 867 A.2d 187 (Del. 2005).
[12] *Clawson*, 867 A.2d at 191.
[13] *Id*. at 192.

defendant's arm.[14] The Superior Court found that doing so would "degrade the vacuum prematurely [and] also compromise the tube's sterility."[15] *Fountain* held that the State is required to show, "by a preponderance [of the evidence,] that the needle was first placed in Defendant's arm before the stopper on the [vacuum] tube was punctured"[16] in order to show that the blood sample is free of contamination that might produce inaccurate results.

(10) But here, the record does not reflect any deviation from the blood-draw protocol. Davis's only objection is that Dickenson omitted testimony as to a particular step of the blood-drawing procedure. Davis does not claim that Dickenson affirmatively indicated that she did not follow the required protocol as was the case in *Fountain*. And Davis appears to have carefully avoided the topic when he cross-examined Dickenson. Under our precedent, such minor omissions are insufficient to show that the State did not follow proper procedure or otherwise failed to establish a proper foundation.[17]

(11) Because the State proffered evidence that it followed proper procedure when drawing Davis's blood and Davis cannot point to any evidence to the contrary, we find no abuse of discretion in the Superior Court's decision to admit the BAC

---

[14] *Fountain*, 2016 WL 4542741, at *9 ("I put the needle on the tube and then I put the needle into his arm").

[15] *Id*.

[16] *Id*.

[17] *See McConnell v. State*, 1994 WL 43751, at *1, 639 A.2d 74 (Del. 1994) (Table).

Certificate and Report into evidence and, consequently, no error in the Superior Court's final judgment.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

/s/ Gary F. Traynor
Justice

6