# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| **STATE OF DELAWARE,** | ) | |
| | ) | |
| | ) | |
| v. | ) | **Case ID:** 2003005778 |
| | ) | |
| **JUSTIN BOWIE,** | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: August 5, 2022
Decided: September 1, 2022

# OPINION ON DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL, MOTION TO AMEND JUDGMENT OF ACQUITTAL AND MOTION FOR NEW TRIAL
# <u>DENIED</u>

*Isaac Rank, Esquire, Deputy Attorney General*, Office of the Attorney General, Wilmington, Delaware. Counsel for the State of Delaware.

*Mr. Joseph Hurley, Esquire*, Office of Joseph Hurley, P.A., Wilmington, Delaware. Counsel to Justin Bowie, Defendant.

Jones, J.

On April 26 and 27, 2022, a jury trial was held. The Defendant, Justin Bowie ("Bowie") was charged with driving a motor vehicle with a prohibited alcohol content. The jury returned a verdict of guilty on this charge. This was the Defendant's third DUI offense and, as such, he faced a minimum mandatory jail sentence of ninety (90) days. Following the jury's verdict, Defendant moved for a stay of his sentence pending resolution of certain motions. This Court granted that request with certain conditions imposed.

## PROCEDURAL BACKGROUND

During the trial Delaware State Police Crime Lab Director Julie Willey ("Willey") testified. There was no objection to her qualifications, nor was there an objection to the admission, through her testimony, of the results of the Gas Chromatographs Blood Test which showed a blood alcohol reading of .16. The cross-examination of Willey focused on the history of the State's procedure of how the tube was to be inverted versus the manufacturer's instructions and the State's present protocol.

Prior to the start of trial on April 27th, the parties and the Court reviewed the jury instructions. The jury instructions did not include the pattern expert witness jury instruction. No one brought this to the Court's attention, and no one requested the instruction. The pattern expert witness instruction was not given.

At the conclusion of the evidence the Defendant moved for a judgment for acquittal based on the Defendant's argument that the State's procedure for mixing the blood was improper and as such there was not sufficient evidence to support a conviction. The Court denied the motion.

During jury deliberations the jury returned a note. The note read "the State is required to establish the proper protocols. Do we have to determine whether the State protocols were proper? Or just that the State protocols were followed?" The Court responded to the note by instructing the jury "You are to determine whether the State protocols were followed." Shortly thereafter the jury returned a verdict of guilty.

After the jury was discharged defense counsel indicated that he intended to file a *writ of certiorari* and a certificate of reasonable cause and requested the Court to impose a briefing schedule. Defense counsel acknowledged on the record his seven-day time frame as required by the Rules to file a Judgment of Acquittal. The Court instructed counsel "seven days, file it." The Court added that "if you have to supplement it after we have the transcripts we will do that."

On May 9, 2022 Defendant filed a "Formalization of Motion for Judgment of Acquittal Pursuant to Rule 29." The Motion did nothing more then memorialize the Rule 29 motion that the Court denied at the end of the State's case.

On July 12, 2022 Defendant filed a Motion to Amend and Expand Defendant's previously filed Motion seeking Judgment of Acquittal under Rule 29.

In essence the Defendant requests in this Motion that the Court consider his previously filed Motion as a Motion for Judgment of Acquittal or, in the alternative, a Motion for New Trial. [1]

## THE TIMELINESS OF DEFENDANT'S MOTIONS

I first address the question of whether Defendant should be permitted to amend his motion under Rule 29 to include it as also a Motion for New Trial under Rule 33. I am persuaded that Defendant's failure to seek relief in the form of a Motion for New Trial was an oversite on the part of defense counsel. I am also persuaded that the primary argument raised in the new trial motion is the same argument raised by the Defendant in his Motion for Judgment of Acquittal. Finally, I am persuaded that the Court's instructions to counsel that Defendant could supplement his filing once the transcripts were received could be viewed as permission to amend the motion. On these unique facts I will allow Defendant to file a Motion for a New Trial.

Having allowed Defendant to proceed under Superior Court Criminal Rule of Procedure 33 as well as Superior Court Rule of Criminal Procedure 29 does not, however, resolve the issue of the timeliness of the motions when the original Motion for Acquittal was denied. The Court made it clear on the record that any motion filed had to comply with the 7-day time limit.

---

[1] Defendant had also moved to secure production of *Brady* material. That Motion was withdrawn on July 12, 2022.

Under both Rules 29 and 33, any motions are required to be filed no later then 7 days after verdict or finding of guilty… or within 7 days after discharge. When the timing rules are applied under Motion for Judgment of Acquittal or a New Trial Motion, the Motions were due on May 6. The Motion was not filed until May 9. Superior Court Rule of Criminal Procedure 45 provides that the Court may not extend the time for any action under Rules 29 and 33… except to the extent and under the conditions stated herein.[2] The Delaware Supreme Court has indicated the time periods under Rule 45 are jurisdictional.[3] Therefore, under the plain language of Superior Court Criminal Rule 45, Defendant's Motions are untimely and require dismissal.[4,5]

## DEFENDANT'S MOTION ON THE MERITS SHOULD BE DENIED

Even if Defendant had filed his motions timely, the grounds asserted by Defendant do not justify an Acquittal or a new trial.

Defendant's first contention is that the Court erred in not giving the expert witness jury instruction. The Court's consideration of a motion for new trial based on a jury instruction evaluates whether "the alleged deficiency in the jury instructions undermined the jury's ability to intelligently perform its duty in

---

[2] None of the conditions stated in Rule 45 are applicable to this case.

[3] *Maxion v. State*, 686 A.2d 148, 151 (Del. 1996).

[4] *State v. Halko*, 193 A.2d 817 (Del. Super. 1963).

[5] Defendant maintains that there was no prejudice to the State by the late filing. I agree that there was no prejudice. However, the existence or non-existence of prejudice is not the standard as time limitations are jurisdictional.

returning a verdict."[6] Jury instructions are not grounds for reversal if they are "reasonably informative and not misleading," indeed, "some inaccuracies… are to be expected in any charge [.]"[7] All jury instructions are reviewed as a whole.[8] Where, as here, the instruction is challenged for the first time on a Motion for New Trial, the Court reviews its actions under a plain error standard.[9]

In the instant case, the Court gave the general witness credibility instruction. Willey testified as an expert witness. In this case, no one requested a specific instruction on how the jury was to consider Willey's testimony.

A comparison of jury instruction 4.6 and the correlating portions of the credibility of witness instruction given in this case on how to weigh the credibility of the witness reveals the similarities:

| "However you must give expert testimony only the weight that it deserves. You may disregard expert testimony entirely if you conclude that: | "[I]t is your duty to give credit to that portion of the testimony which you believe is worthy of credit, and you may disregard that portion of the testimony which you do not believe to be worthy of credit. In considering the credibility of the witnesses and in testimony, you should take into consideration each witness." |
| --- | --- |
| (A) the expert opinion is based upon insufficient education, training or experience; | "means of knowledge, strength of memory and opportunity for observation… the ability to have acquired the knowledge of facts to which the witness testified" |

---

[6] *Hankins v. State*, 976 A.2d 839, 842 (Del. 2009).
[7] *Id.*
[8] *Lloyd v. State*, 152 A.3d 1266, 1271 (Del. 2016).
[9] *Riggins v. Mauriello*, 603 A.2d 827, 830 (Del. 1992).

| (B) the reasoning in support of the testimony is not sound; or | "the reasonableness or unreasonableness of the testimony," |
|---|---|
| (C) the testimony is outweighed by other evidence." | "the consistency or inconsistency of the testimony… the fact, if it is a fact, that the testimony has been contradicted" |

The instruction as given invited the jury to consider Willey's means of knowledge and ability to have acquired her knowledge, her reasonableness, and whether her testimony was contradicted by the other evidence in this case. The instruction as given would have prompted precisely the same consideration that Instruction 4.6 would have prompted in the mind of the jury as they considered her education and experience, her reasoning, and other evidence in the case.

There is no doubt that in hindsight the Court should have given the expert witness instruction. But that is not the test. The test is whether the failure to give the instruction impaired the jury's ability to intelligently perform their duties as jurors. In this Court's view, given that the instruction prompted the same considerations in the mind of the jury, it cannot have impaired the jury's ability to intelligently perform their duties as jurors. A defendant is "not entitled to a particular jury instruction," so long as the instructions are "reasonably informative."[10]

I now turn to the central issue in this appeal which encompasses the two other grounds (improperly answer to the jury's note and sufficiency of the evidence to

---

[10] *Goode v. State*, 2018 WL 3323644, at *3 (Del. July 5, 2018).

7

justify the guilty finding) which forms the basis of Defendant's request for relief. Defendant challenges the State's protocol of inverting the tube containing the Defendant's blood. Defendant maintains that the decisions in *Hunter v. State*, 55 A.3d 360 (Del. 2012) and *Clawson v. State*, 867 A.2d 187 (Del. Super. Feb. 26, 2021) require this Court to overturn Defendant's conviction. The State counters that this Court's decision in *State v. Patel*, 2021 WL 754303 (Del. 2021) has squarely addressed the state's procedure at issue in this case and based on *Patel,* Defendant's Motions should be denied.

According to the Defendant, the DSCPL protocol is unreliable because it does not specify a required number of inversions to ensure adequate mixing, which is inconsistent with the instructions of the test tube manufacturer – Becton Dickinson. Also, Defendant argues that the basis on which Willey changed the blood mixing instructions ("DSP Instructions") is not a sufficient reliable basis because she relied on discussions with various law enforcement agencies, not the Becton Dickinson instructions.

The admissibility of BAC test results turns on whether the State establishes an adequate evidentiary foundation for the results. A showing by the State that an intoxilyzer test's instructions or requirements were followed "is the guarantee of reliability and accuracy that is the foundational cornerstone to the admissibility of

8

the results of a blood test.[11] Delaware Rules of Evidence 702 governs the admissibility of expert testimony. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case. [12]

The Delaware Supreme Court has formulated a five-part test to determine admissibility of scientific or technical expert's testimony. The Court must determine:

> 1. The witness is qualified.
> 2. The evidence is otherwise admissible, relevant, and reliable.
> 3. The basis for the opinion are those reasonably relied upon by experts in the field;
> 4. The specialized knowledge being offered will assist the trier of fact to understand the evidence or determine a fact in issue; and
> 5. The evidence does not create unfair prejudice, confuse the issues, or mislead the jury.[13]

As to the third requirement, Delaware Rule of Evidence 703 provides that:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data

---

[11] *State v. Patel*, 2021 WL 754303, *2 (Del.Super. Ct., Feb.26, 2021) (citing *Hunter v. State*, 55 A.3d 360, 364-55); *see also Clawson v. State*, 867 A.2d 187, 191 (Del. 2005).
[12] D.R.E. 702.
[13] *Patel*, 2021 WL 754303, at *3 (citing D.R.E. 401, 402, 403, and 702).

informing an opinion on the subject, they need not be admissible for the opinion to be admitted.[14]

It is Defendant's position that his blood test results should not have been admissible at trial because the DSP Instructions are not sufficiently reliable under Delaware Rule of Evidence 702. As such, Defendant further argues that, because the blood test results should not have been admissible, no reasonable trier of fact could have found him guilty of the DUI charge.

The Court is instructed and guided by this Court's decision *State v. Patel*, 2021 WL 754303 (Del. Super. Feb. 26, 2021). In *Patel* the exact argument being raised in this case was raised in a pretrial motion in limine to exclude Willey's testimony. In denying the Motion in Limine the Court in *Patel* found that Willey was found to have the authority to make established protocols in collecting blood samples.[15] The DSP Instructions inform phlebotomists as to the specific requirements of an individual's blood draw. Willey has the responsibility and oversight over the blood and breath DUI program in Delaware.[16] Thus, Willey, according to the *Patel* Court, had the authority to make changes to established protocols in collecting blood samples.

In *Patel* Defendant took issue with the change in the DSP Instructions which was authorized by Willey. Prior to 2014, the Instructions read: "immediately after

---

[14] D.R.E. 703.
[15] *Id.* 2021 WL 754303, at *6.
[16] *Id.*

10

the blood collection, assure proper mixing of anticoagulant powder by slowly and completely inverting the tube at least 5 times."[17] Willey did not author this version of the Instructions.[18] At the time of Defendant's blood draw, the instructions were, and remain to be: "immediately after blood collection, assure proper mixing of anticoagulant/preservative powder slowly and completely inverting the tube."[19] The following language was also provided in the Becton Dickinson Instructions:

> Whenever changing any manufacturer's blood collection tube types, size, handling, processing, or storage condition for ap articular laboratory assay, *the laboratory personnel should review the tube manufacturer's data and their own data to establish/verify the reference range for a specific instrument/reagent system. Based on such information, the laboratory can then decide if a change is appropriate.*[20]

It was this language that the *Patel* Court relied upon to support its decision that Willey had the authority to author the change to the DSP instructions.[21] The Court explained that this language "anticipates end users developing their own instructors and protocol." Under this authority, the DSPCL established a collection and testing procedure: the DSP Instructions.

*Patel* does not stand alone. In *State v. Green*, the Superior Court also rejected defense counsel's argument that the State failed to show compliance with the blood

---

[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] *Id.* at *1.
[21] *Id.*

tube manufacturer's protocols.[22] The *Green* Court found that the State, by offering testimony that the phlebotomist "inverted the tube," offered evidence sufficient to find that the DSP Instructions that the tube be "mixed properly," were followed and thus the State's foundational burden had been satisfied. Critically, the Delaware Supreme Court, "having considered [the] matter on the briefs filed by the parties and record on appeal, [] determined that the judgment of the Superior Court should be affirmed on the basis of and for the reasons assigned in the Superior Court's July 7, 2019 evidentiary ruling and the Court's October 15, 2019 Orders."[23]

*Patel* makes it clear that Willey has the authority to revise the testimony procedures and the implementation of those procedures does not violate the teaching of *Clawson v. State,* 867 A.2d 187 (Del. 2005) nor *Hunter v. State*, 55 A.3d 360 (Del. 2012).

Corporal Pietlock testified that he was present at the time of the Defendant's blood draw and that he witnessed the phlebotomist invert the test tube, at least one time, after obtaining the sample from Defendant. The blood sample was then transported to a secured refrigerator at Troop 2. Willey testified that she picked up the blood sample from Troop 2, brought it to the Delaware State Police Crime Lab and the sample was placed in a secured refrigerator at the lab until testing.

---

[22] *State v. Green,* 2019 WL 5273230, *1 (Del. Super. Ct., Oct. 14, 2019*), aff'd,* 238 A.3d 192 (Del. 2020).
[23] *Green v. State*, 238 A.3d 192 (Del. 2020).

At trial Willey was qualified as an expert concerning blood alcohol analysis, on both collection and testing, by knowledge, skill, experience, training and education. Willey has worked for the DSPCL for thirty years. [24] She works in supervisory roles and has her own case load within the blood and breath alcohol program.[25] She has a Bachelor of Science in Genetic Engineering and Biology, and a minor in chemistry. Part of Willey's duties include chemically analyzing blood to determine its blood alcohol concentration, and she does this on anywhere from thirty to one hundred samples per week. [26] This has been part of her job duties since 2008. [27] She has also been qualified as a witness over 80 times in Delaware courts. [28]

Willey testified that the number of inversions is not likely to affect the integrity of a blood sample for BAC purposes, and that blood within the test tube is mixed other times than at the time of inversion by the phlebotomist.[29] Specifically, Willey testified:

> So blood is liquid as it existed in the tube. As an officer is carrying that blood kit to the evidence refrigerator and transporting that sample, the blood is indeed mixing within that tube. There is no border that would prevent that or no barrier to prevent that mixing to occur. The blood kits are lying typically down in the evidence refrigerator, so they're laying in a horizontal way so that the blood is mixing that way.

---

[24] *Id.* at 64.
[25] *Id.*
[26] *Id.* at 65.
[27] *Id.*
[28] *Id.* at 65-66.
[29] *Id.* at 113-114.

I likewise transport those kits and at the crime lab prior to analyses we likewise rotate those kits so that mixture does indeed occur.[30]

Willey also opined that, while she is not aware of research studies regarding ethanol increasing from zero to 0.16 based on contamination of the blood sample, that she is aware of in excess of 10 research studies that discuss the generation of alcohol in contaminated blood samples, in general.[31] Willey offered her opinion that she is not aware of how the BAC of a sample stored in a tube with additive powders and refrigerated, like the Defendant's blood was in this case, could go from 0 to .16 percent in 6 days.[32] Specifically, Willey testified:

> There's been research that has been performed where blood samples have been actually inoculated with bacteria, yeast, other substances and have either been left at different temperatures, adding a preservative, refrigerating, et cetera, and there has bever been anything that I've read that there would be an accumulation of alcohol as high as a .16 read with respect to a sample that was not preserved or not refrigerated.[33]

As to the Defendant's blood sample at issue in this case, Willey personally examined the sample.[34] She testified that she performed an inspection prior to testing and determined that the blood was not coagulated nor were there any other irregularities with the sample.[35] Willey further testified that this is a matter of

---

[30] *Id.* at 114.
[31] *Id.* at 116.
[32] *Id.* at 115.
[33] *Id.* at 115.
[34] *Id.* at 76.
[35] *Id.* at 67-78.

practice in the DSCPL – that analysts check blood samples prior to testing to determine if there are any irregularities in the sample.[36] Willey offered testimony regarding the failure to mix the additive powders in the test tube.[37] She stated that if the blood is not properly mixed with the anticoagulant, then the blood will clot and testing is unable to be performed.[38] If the blood becomes contaminated, then it could yield an inaccurate test result.[39] One implication of contamination of a blood sample is that the blood could generate ethanol or alcohol.[40] Willey testified that, after performing the testing on Defendant's blood sample, the test results indicated a blood alcohol content of .16.[41] Willey testified that she followed the State protocol.[42]

The Court finds that, based on the testimony presented at trial, the DSP Instructions are sufficiently reliable under Delaware Rule of Evidence 702, that the Instructions were appropriately complied with, and the Defendant's blood test results were reliable and thus properly admitted at trial. As the blood test and procedure to collect said test were reliable there is no merit to Defendant's argument that the Court's instruction to the jury that they were not to consider the adequacy of the State's testing procedures was error. Based on this same evidence there was

---

[36] *Id.* at 70.
[37] *Id.* at 69.
[38] *Id.* at 69-70.
[39] *Id.* at 69-70.
[40] *Id.* at 86.
[41] *Id.* at 79.
[42] *Id.* at 76.

sufficient evidence for the jury to convict Defendant of Driving Under the Influence based on a prohibited alcohol content.

For all of the reasons stated about Defendant's motions to acquit and motion for new trial are **DENIED**.

**IT IS SO ORDERED.**

_/s/ Francis J. Jones, Jr._
Francis J. Jones, Jr., Judge

/jb
*Original to Prothonotary*